**DWORKEN v GUARANTEE TITLE & TRUST COMPANY**

**DWORKEN v LAND TITLE ABSTRACT & TRUST COMPANY**

**DWORKEN v CUYAHOGA ABSTRACT TITLE & TRUST COMPANY**

Ohio Appeals, 8th Dist, Cuyahoga Co

Nos 12433, 12435, 12437. Decided Aug 15, 1932

Joseph L. Stern, Cleveland, for plaintiff.

Joseph L. Stern, Harry F. Payer, J. B. Dworken, D. F. Anderson, Roger ·Jewett, and Baruch A. Feldman, Cleveland, for Cuyahoga County Bar Association.

Tolles, Hoggsett & Ginn and William C. Cockley, Cleveland, for defendants.

VICKERY, J

These three cases came into this court on appeal from the Common Pleas Court, and, the questions in each case being substantially the same, they were heard below together, and are likewise heard together ·in this court. They were heard in this court de novo upon a transcript of the testimony which was taken in Common Pleas Court,

statements and arguments of counsel and the briefs of counsel that were employed in the cases and also the briefs of Amici Curiae. We have given some time to the consideration of the questions involved in this law suit, as they seem to be of much importance not only to the members of the· Bar in whose interest this suit was brought by Mr. Dworken, but to the general public as well as to the· defendants in the court below, the appellants in this court.

Dworken brought the suits as a practicing lawyer, one who was admitted to the Bar and had a license to practice law in all the courts of the State of Ohio, and was located in Cleveland, Cuyahoga County, Ohio, and brought the suits not only in his· own behalf, but in behalf of the lawyers of the county and elsewhere, especially those in Cuyahoga County situated as he was situated; and this court permitted the Cuyahoga County Bar Association to become an intervening party to these suits, and to file a brief in its own behalf.

The action was brought in the court below in injunction, to prevent the various abstract companies named in the caption of this opinion, from certain practices which it is claimed by plaintiff, on behalf of himself and other lawyers similarly situated, amounted to the practice of law which he claimed they had no right or power to do, inasmuch as the various defendants were corporations and .as such could not either directly or indirectly practice law. The cases were heard at length before Judge Terrell of the Common Pleas Court, and were argued at length before him by the able lawyers on both sides of the cases, and I think I will be pardoned if, under the circumstances, I devote some .attention to the findings of facts and conclusions of law that were rendered in the cases by Judge Terrell, which were filed in this court, and, which have been made much use of in the trial in this court, inasmuch as all the members of this court readily agreed that several of the findings of fact and conclusions of law based thereon are correct; and they were so clearly expressed and plainly indicated in the journal entry that probably they could not be better stated than they are stated there. Consequently, I feel· at liberty to make them the basis of my remarks so far as they concern several of the findings of facts and conclusions of law based thereon. They are conclusions of law A, C, D, E, F. While the writer of this opinion does not coincide with all the views therein expressed in the manner in which they are expressed, yet, in substance, they embody his notion upon those questions except that the court below seems to base

these conclusions of law upon the fact that the legislature had not **authorized** the defendants to do the things they are thereafter enjoined from doing; whereas, in the judgment of the writer of this opinion, they could not do those things even though authorized by the legislature; but, inasmuch as the other members of the court agree that the court below was right in those findings, this member of the court is willing to make them the basis of a decision upon the matters therein contained; that is, the conclusions of law A, C, D, E, and F, and probably were the writer called upon to re-state those propositions of law, he could not better state them than they are stated in those conclusions of law.

The main difficulty among the members of this court has been on the conclusion of law contained in B, and the statement of fact number 3 upon which this conclusion is based. Conclusion of law B, begins:

"The acts and conduct of defendant, as set forth in findings of fact 3 hereof, although constituting the practice of law, are such as are expressly authorized by the legislature by virtue of the provisions of §9850 GC * * *."

Finding of fact 3 reads:

"In the conduct of the defendant's business, it prepares and furnishes to its customers, documents interchangeably called 'Statement of Title' or 'Certificate of Title' concerning real estate. Such a statement or certificate purports to show only such live matters, appearing of record in the county where the real estate described therein is located, as in the opinion of the defendants, as determined by its employees, may affect the title such as, for example, clouds, liens, encumbrances, etc.

The concluding paragraph of each such certificate or statement uniformly contains substantially the following language:

'We have examined the title to the above described premises, from the year 1795 to this date, and in our opinion, the same is good in the name of John Doe and free from encumbrances except as above shown, as appear by Cuyahoga County Records.'

Any clouds, liens, encumbrances, etc., which may affect the title are shown as items preceding the above quoted paragraph. The defendant charges a minimum fee of $22.00 for such a certificate of title, the additional charge if any, above said minimum, being determined in accordance with the amount of time required to make the search and prepare the certificate. The defendant prepares and furnishes said certificates or statemnets at the request of customers even though the customer does not order or otherwise receive any title insurance or other guarantees by the defendant."

The finding of the Common Pleas Judge in that conclusion of law B, was that the abstract companies, the defendant companies, were practicing law by doing what they did do, as contained in statement of fact 3, but that the same was authorized by the statute of Ohio, to-wit, §9850 GC.

The finding of fact and the conclusion of law in this instance was satisfactory to the defendant companies, the appellants in this court, they having appealed from the decisions against them, but being satisfied with the finding in their favor in conclusion of law B; the Appellee, however, not being satisfied with said finding and conclusion of law. The Court of Appeals has had much difficulty with this finding of fact and conclusion of law. The writer of this opinion does not agree with the finding of fact nor the conclusion of law, and he takes issue sharply with the trial judge upon this question. It depends largely upon the meaning of the language used in the statute. Judge Terrell in his finding fact 3, and his conclusion of law B, as already stated, finds that the abstract companies are practicing law by doing what they are found to be doing in finding of fact 3, but that the statute authorizes it.

Now, if it is admitted that they are practicing law under this section, they are doing so only by virtue of the statute, and in the judgment of the writer of this opinion, the Legislature has no power to authorize any person or corporation to practice law. That is solely and exclusively the function of the Supreme Court of Ohio and that is true whether the practice of law be confined to office practice or whether it is practice before the courts. That the Supreme Court is the only authority to say who may practice law, is corroborated and sustained by §1698 GC, which reads as follows:

Sec 1698 GC:

"WHO MAY PRACTICE AS ATTORNEY OR COUNSELLOR AT LAW: No person shall be permitted to practice as an attorney and counsellor at law, or to commence, conduct, or defend any action or proceeding, in which he is not a party concerned, either by using or subscribing his own name, or the name of another person, unless he has been admitted to the bar by order of the Supreme Court or of two judges thereof. Such court shall fix times when examinations shall take place, which may be either in term or vacation, and prescribe and publish rules to govern such examination. This section shall not apply to persons admitted under pre-existing laws."

Unlike the English and Canadian system, we have no division of practitioners of law. In both England and Canada they have the Barrister who appears in court, and the Solicitor who is an office practitioner who arranges cases, etc., and only appears in court as an assistant to the Barrister, but both are practicing law; one having the power to argue before the courts, and the other not. In America we have permitted any person who is admitted to the practice of law by the Supreme Court of the state or whatever the admitting to practice body is, to appear in all the courts of the state, and after so long a practice he can appear in the United States Court, by being admitted by the District, Circuit or Supreme Court as the case might be; and when so admitted in any court in the United States he can perform all the functions of a lawyer whether they be those carried on by a solicitor in the English or Canadian practice, or a Barrister under such practice. So, in our practice in Ohio at least, we have no distinction. A man may practice law and never go into court, as many of our most prominent lawyers do, or he can appear in court and all he has to do is to be admitted to the bar. So if, as Judge Terrell finds, that under the finding of fact 3 the defendant companies are practicing law, then, of course, he should have granted an injunction in accordance with the other decisions such as in the apartment house cases and other cases in Ohio, which hold that a corporation cannot practice law, nor can it hire somebody in its office, even though he be a lawyer, to appear for others in the courts or otherwise practice law. The practice of law does not mean representing oneself. It means the authority and power to represent another in court or out of court. Any person can represent himself. He can plead his own case in court, and has a right to be heard as much as any lawyer, but he cannot appear for any person other than himself, and so a corporation might handle its own legal business and it might hire a lawyer, an employee, to do that business for it. That is its own business. But when it takes cases for others, it is usurping the functions of a lawyer both that of a barrister and solicitor under the English and Canadian system, and that of the ordinary lawyer under our system.

So, the question becomes important as to whether Judge Terrell was right in his finding that the defendants had the right to practice law by virtue of the statute already cited. The writer thinks an analysis of that statute, if the abstract company is confined to what the statute permits, is not practicing law and this member of the court thinks that under the statute an abstract company could do everything that is provided for under the statute without being guilty of practicing law, but, as already stated, if that statute authorizes and permits an abstract company to practice law, then it is beyond the power of the legislature to make such a statute, inasmuch as the question of who shall practice law is solely within the power of the Supreme Court of Ohio. A reading of the statute points out what the powers and duties of an abstract company are, with reference thereto. An abstract company is a photographer of the record relating to a piece of real estate that it is asked to furnish an abstract of title for, and the same is true whether it is done by full abstract or by a certificate. A certificate is merely a certification of what is found upon the record and anybody could do that, who is familiar with the records. The abstracter has the advantage of not only being familiar with the records but of having indexes in its own office from which he or it can make up the abstracts and certificates of title. The point that I think is objectionable in the form of certificate sought to be reached by this injunction process is the "opinion" of the abstract company. Whenever such companies attempt to give an opinion as to when the title is good in a particular person, they express a legal opinion. When they examine the books and make an abstract or a certificate which goes back to the beginning of Cuyahoga County and even long before it was a county, from the books that are found in adjoining counties and not Cuyahoga County, but ever since 1795 when this section of Ohio was settled and land was being transferred from the Government to the Connecticut Land Company and from the Connecticut Land Company to various parties, in order to have a complete abstract or a certificate of title, whether found in this county or in adjoining counties, the certificate goes back to that date. Now, as already stated, the duties of an abstracter are those of a searcher and he, of course, must know what liens, mortgages and transfers affect the title which he is running down, yet as to whether the transfers are legal or whether they are not legal, is not for him to determine. That is either for a court in clearing up the title in an action to quiet title, or to get rid of liens, or, at least it requires the opinion of a lawyer who is authorized to practice law and it makes no difference whether he practices it in court or in his office. It calls for a legal opinion. The abstracter's duty is ended when he has searched the various offices, like the recorder's office, the county

clerk's office, the treasurer's office, the auditor's office, the United States District Court and the various other offices as to whether or not there are any outstanding records of liens or claims that might be made against the property. His duty is complete when he sets those down. He goes on through with his work; searches the record from 1795 down to the date he makes the certificate and it is a sort of photograph of what appears from the record; and the party in whose name the land stands at the time he makes his certificate or abstract may or may not have a good title to that land. That depends clearly upon the legality of the various transfers and whether there ever has been any hietus in the transfers or whether there have been any liens upon the property or whether the person had a fee simple or whether he had a life estate or whether the grantor had a life estate only and conveyed in fee simple, or whether the rule in Shelley's case might apply in certain instances, or whether it did not, and various legal questions might be involved. The legal title, nevertheless, might be in a person that was not the real owner of the property and so far as the records are concerned, a true tracing of the title would put it in that man's name. Now, that is a photograph of the record relating to that particular title.

After the photograph is thus made, it calls for a legal opinion as to whether the title is good or otherwise in that person who is seeking to transfer it. The person who is seeking to buy the property is entitled to have the opinion of his lawyer or some lawyer upon that proposition. It is a legal proposition, and the abstract companies have no right, in the judgment of the writer, to render a legal opinion that the title is good in John Doe. That calls for a legal opinion and I think the way the certificate that is issued by all the abstract companies involved here reads, does constitute the practice of law, and I differ with the trial court on the question that the statute authorizes them to practice law, because the statute nowhere authorizes them to give an opinion as to the goodness or the soundness of the title being in a certain individual. It simply authorizes them to give the certificate of the state of the record; for example, the Probate Court is authorized to give a certificate as to the issuing of a marriage license and its return when it is issued from his office, and he would be a bold judge who would certify that the marriage is legal, because there might be many things that would interfere. The parties might have been married to other persons when the license was issued, or they might be

within the prohibited degree; that would not show on a certificate. Consequently, the certificate of a marriage license having been issued and its return, does not show that the marriage is legal. Nor does the certificate that the land stands in the name of a particular individual prove that he is the owner; and when the abstract companies go beyond the things authorized by the statute, upon which conclusion of law B was based, such conclusion goes outside the statute and infers that that statute authorizes the giving of a legal opinion. The writer of this opinion does not think so. The statute is as follows:

"Sec 9850 GC. Powers of such Companies.

A title guarantee and trust company may prepare and furnish abstracts and certificates of title to real estate, bonds, mortgages and other securities, and guarantee such titles, the validity and due execution of such securities, and the performance of contracts incident thereto, make loans for itself or as agents or trustee for others, and guarantee the collection of interest and principal of such loans; take charge of and sell, mortgage, rent or otherwise dispose of real estate for others, and perform all the duties of an agent relative to property deeded or otherwise entrusted to it."

Now, in my judgment, this is plainly within the powers of an abstract company to do. The only thing they certify to as correct under the provisions of the statute, is the correctness of the securities they issue. They are not authorized by that statute to issue an opinion as to where the title legally is. The companies have, for a number of years, exceeded their authority and have added to that this clause:

"We have examined the title to the above described premises from the year 1795 to this date and in our opinion the same is good in the name of John Doe and free from encumbrances except as above shown, as appears by Cuyahoga County Records."

The writer of this opinion thinks that that is a usurpation of power that is not granted by statute and that usurpation of power is an expression of a legal opinion upon the title to that real estate and constitutes with that opinion added, within the meaning of what is termed practicing law in Ohio; and it being a corporation and having no right to practice law and never having been authorized by the Supreme Court to practice law, the legislature could not confer the power upon corporations or abstract companies to practice law.

Now, a certificate, according to Thompson on Abstracts and Titles, Art. 209, p. 320, is as follows:

"**Abstracter's certificate:** Having completed his work of compiling the abstract there should be included at the end thereof a complete, definite and unqualified certificate as to the various searches made in compiling the abstract, and that these searches cover all public records available, in which might be any particular thing that would affect the title of the property being abstracted or which would be a lien or charge against it. The certificate should clearly declare in no uncertain terms exactly what the abstract contains and the sources from which the material was obtained. It should contain no subtle meaning or wording. Liability of the abstracter cannot be limited by a vague and obscure certificate. If he states in his certificate that he finds no liens of record against the property in question this is, equivalent to stating that there are none of record. Where a certificate stated that the abstract was a 'full, true and complete abstract of title' this was held to cover suits affecting the title as well as conveyances or encumbrances. An abstracter may limit his liability by a certificate that he has examined the record in certain offices only. Thus where a certificate stated that a careful search had been made of the records of the office of the county clerk, the clerk of the district court, the county treasurer, and that there were no liens of record upon the property described except as mentioned in the abstract, it was held there could be no recovery in a suit upon the bond of the abstracter for a loss occasioned by the omission from the abstract of a prior mortgage upon the property then of record in the office of the Register of Deeds. The contents of the certificate should conform to the agreement between the abstracter and his employer and should be definite and certain in its statements. If the examination was made from the records this fact should be stated, and where it was made from the examiner's indexes the certificate should so state. The certificate should first correctly describe the land covered by the search. It should then proceed in a form similar to the following:

'The above and foregoing abstract of title is a true, correct and complete abstract of all conveyances and other instruments of writing on file or of record in the office of the recorder, or other office or offices where such things are to be found; that it contains an abstract or sufficient notation of any and all proceedings had in the civil and probate courts of the county affecting the title; that there are no judgments, mechanics liens, foreign executions, attachments, suits pending, transcripts of judgments from the United States Circuit Court or District Courts, or any other such matters which in any way affect the title to said real estate and there are no taxes, assessments or other liens which in any way affect the title to said real estate, except as shown in the abstract.'

It is suggested that the certificate should include the time of search from beginning to closing, the matters of the items certified against and in the search for judgments, the names of the parties against whom you have searched for judgments; also in the matter of taxes the certificate should show whether there has been a search for special assessments. * * *"

Thompson clearly draws a distinction between a searcher for the title and an examiner of title which calls for a legal opinion of the title and clearly he is authority for a definition of an opinion and an examiner of a title. It calls really for a dual work; that is, the abstracter searches the title and brings a photograph of it to the examiner and he then, basing his opinion upon the correctness of the abstracter's delineation of the various steps in the progress of that title from 1795 down to the present date, renders his opinion and that is an important part of the transaction, and it calls in many cases for the highest legal skill;—not one skilled in searching a record but one skilled in the niceties of the law. In this respect Thompson on pages 1036-37, article 810, says:

" 'Examination of title' and 'searching title.' Inasmuch as this work is intended for the use of both lawyers and abstracters it is deemed proper to consider the terms commonly used to designate the work of each. The work of the lawyer who searches the various public offices in which the record affecting title to real estate are found in order to determine the ownership and condition of a particular tract of land may properly be termed an 'Examining of the title.' On the other hand, the person who searches the records with no other object than to note down in more or less brief form the instruments and proceedings found therein and to use the same in making up the abstract, his work is more properly called 'Searching the title.' He does not study the facts discovered by his search for their legal effect on the title. While he examines or reads the records and prepares a digest of their contents, his work is more or less

mechanical. True, many abstracters, from long experience in the business, readily recognize the elements which are necessary to establish title, but where his work does not include the rendering of an opinion as to the validity of the title as disclosed by his search, he cannot properly be termed a 'title examiner.' While the abstract is the result of a careful and accurate 'examination' of the records, together with the instruments found recorded therein, the process taken as a whole must be distinguished from the examination conducted by one learned in the law and whose duty it is to render an opinion as to the validity of the title."

Now a certificate, to state it plainly, is merely a certification that a search has been made and that the searcher has found upon the records certain entries and many of those entries might involve a grave question as to whether the present holder and claimer of the title is really the rightful owner. And when an abstract company certifies that in its opinion, having examined the title to the real estate described from 1795 down to the present, the title is good, when it does not insure the title, it is an assumption of authority which it does not have and personally I do not think it could be held as a lawyer for giving a false opinion. Of course, an abstract company, if it overlooks anything on the record which would render the title futile or void in the present owner, would be liable for damages to the extent of the loss and the insurance of the title simply insures against what is not upon the record and it limits its liability by the insurance to the extent of the bond. If it has correctly diagnosed the case and found all the record references to the title which would reflect upon it, it is not liable for damages with or without a certificate. If there is no certificate and it has omitted something which reflects upon the title and which causes loss, it is liable to the full extent of the loss occasioned. Whereas, if it insures it is liable only to the extent of its bond and it is not liable unless it has omitted something from the record from which a legal opinion could be based.

Now, the writer of this opinion has come to the conclusion that while he agrees with the court below on all the findings of fact and conclusions of law in favor of plaintiff below, he cannot agree with him on the one that was found against the plaintiff below.

I think with the opinion of the abstract company attached in the form that it is now used, it does constitute the practice of law and that is not authorized by the legislature and even if it were, the legislature has no power to authorize the practice of law. Therefore, I think, as a member of this court, that a judgment should be rendered in favor of plaintiff in not only the conclusions of law A, C, D, E, and F, but also in B, and that the abstract companies, defendants below, be enjoined from issuing that form of certificate which contains what amounts to a legal opinion that the title is good in John Doe, or any other person.

Inasmuch as my associates concur in this judgment, the decree in each case shall be:

Decree for plaintiff O. S. J.

WEYGANDT, J, concurs in judgment.

LEVINE, PJ, concurs in judgment, but not in the views expressed in the opinion that the legislature could not authorize by statute the expression of an opinion as to in whom the title is good by the abstracting company, but concurs in the views expressed that the present statute does not authorize the expression of an opinion in the form now used by the abstracting companies, but asserts that the legislature might by statute authorize abstract companies to give an opinion in some form.