DAYTON SUPPLY & TOOL COMPANY, INC., APPELLANT, *v.* MONTGOMERY COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Dayton Supply & Tool Co., Inc. v. Montgomery Cty. Bd. of Revision*, 111 Ohio St.3d 367, 2006-Ohio-5852.]

(No. 2005–1464—Submitted February 22, 2006—Decided November 29, 2006.)

LUNDBERG STRATTON, J.

## I. Introduction

{¶ 1} The issue before us is whether a nonattorney corporate officer who prepares and files a complaint with a board of revision on behalf of the

corporation engages in the unauthorized practice of law. Relying on our holding in *Sharon Village Ltd. v. Licking Cty. Bd. of Revision* (1997), 78 Ohio St.3d 479, 678 N.E.2d 932, the Board of Tax Appeals ("BTA") held that a corporate officer for Dayton Supply & Tool Co., Inc. had engaged in the unauthorized practice of law by preparing and filing a complaint with the board of revision on the corporation's behalf, and therefore, the board of revision lacked jurisdiction to consider the complaint.

{¶ 2} The general rule is that a layperson cannot engage in the practice of law. However, public-interest factors persuade us to hold that *a corporate officer* does not engage in the unauthorized practice of law by preparing and filing a complaint and presenting the claimed value of the property at a hearing before the board of revision on behalf of his or her corporation, so long as the officer does not make legal arguments, examine witnesses, or undertake other tasks that can be performed only by an attorney. In the instant case, we find that the corporate officer's conduct falls within these boundaries. Accordingly, we reverse the decision of the BTA.

## II. Facts

{¶ 3} Dwight Woessner is the owner and executive vice-president of appellant, Dayton Supply & Tool Company, Inc., which owns a parking lot on Monument Avenue, parcel No. R72–7–4–1. For tax year 2002, the Montgomery County Auditor determined that the market value of this parcel was $786,140. Woessner prepared and filed a valuation complaint with the Montgomery County Board of Revision ("BOR"), alleging that the market value of the parking lot was $103,860. The Dayton Board of Education filed a countercomplaint, alleging that the county should maintain the auditor's value of $786,140.

{¶ 4} Woessner appeared on behalf of Dayton Supply & Tool at the hearing and testified that the market value of the property was $103,860, the amount determined by the auditor for the previous tax year. Woessner did not present any evidence, examine any witnesses, or make any legal arguments. The board of education argued that the BOR should retain the auditor's value of $786,140. On October 31, 2003, the BOR issued a decision finding that the value of the parcel was $786,140.

{¶ 5} Dayton Supply & Tool appealed to the BTA. The BTA remanded the case to the BOR with instructions to dismiss the complaint and retain the auditor's value because Woessner had engaged in the unauthorized practice of law by preparing and filing the complaint with the BOR, thereby depriving the BOR of jurisdiction to hear the complaint pursuant to *Sharon Village Ltd.*, 78 Ohio St.3d 479, 678 N.E.2d 932.

{¶ 6} This cause is now before the court upon an appeal of right.

### III.   Regulating the Practice of Law

{¶ 7} Under the Ohio Constitution, this court has "original jurisdiction" regarding "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Section 2(B)(1)(g), Article IV, Ohio Constitution. Thus, this court has the authority to "prescribe rules governing practice and procedure in all courts of the state." Section 5(B), Article IV, Ohio Constitution. Pursuant to this authority, we have adopted a rule prohibiting the unauthorized practice of law, which is defined as "the rendering of legal services for another by any person not admitted to practice in Ohio * * *." Gov.Bar R. VII(2)(A). "The practice of law is not limited to the conduct of cases in court. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law." *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650, at paragraph one of the syllabus. The premise behind the rule prohibiting the unauthorized practice of law is that "limiting the practice of law to licensed attorneys is generally necessary to protect the public against incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation." *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40.

{¶ 8} However, on occasion we have carved out narrow exceptions to this rule and have permitted laypersons to undertake some activities in administrative proceedings even though they may fall within the broad definition of the practice of law. For example, in *Henize v. Giles* (1986), 22 Ohio St.3d 213, 22 OBR 364, 490 N.E.2d 585, we held that laypersons representing claimants before the Unemployment Compensation Board of Review and the Bureau of Employment Services do not engage in the unauthorized practice of law. In *Henize*, we recognized that the two agencies are not bound by the Rules of Evidence or Civil Procedure, and the hearings are informal. We also determined that "attorneys are simply not required in most of these claim reviews" because "in most instances, a formal presentation of legal argument is not needed." Id. at 217, 22 OBR 364, 490 N.E.2d 585. We recognized that permitting nonattorneys to present a case before these agencies is technically permitting the practice of law, but we concluded that "[t]he finding is inescapable that because of the character of the proceedings in light of the interest at stake, lay representation does not pose a hazard to the public in this limited setting." Id. at 219, 22 OBR 364, 490 N.E.2d 585.

{¶ 9} However, we cautioned that "[o]ur decision today does not reach nor permit the rendering of legal advice regarding unemployment compensation laws or board orders. Rather, our narrow holding merely permits lay representation of parties to assist in the preparation and presentation of their cause in order to facilitate the hearing process." Id.

{¶ 10} We further refined this exception in *Cleveland Bar Assn. v. CompManagement*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, wherein nonlawyer members of an actuarial firm represented employers in workers' compensation claims heard by the Industrial Commission. The Cleveland Bar Association filed a complaint alleging that these representatives were engaging in the unauthorized practice of law. Specifically, the bar association alleged that the representatives appeared at oral hearings; examined witnesses; interpreted the law; interpreted the nature, weight, and credibility of the evidence; and prepared, signed, and filed various legal documents. Id. at ¶ 2–3.

{¶ 11} We recognized that from its inception, one of the objectives of the workers' compensation system was to provide a remedy to injured workers without requiring them to hire an attorney or file a lawsuit. Id. at ¶ 12, citing *Mabley & Carew Co. v. Lee* (1934), 129 Ohio St. 69, 74–75, 1 O.O. 366, 193 N.E. 745. Thus, lay representation has been an integral part of the workers' compensation system from the beginning. To that end, the Industrial Commission adopted Resolution R04–1–01, which permits laypersons to (1) investigate and discuss the facts of a claim, (2) assist in the filing and administration of a claim and file appeals, (3) attend hearings, (4) complete and submit various records and reports regarding injured workers, (5) complete and submit records and reports regarding job classifications, (6) complete and submit reports regarding premiums, (7) file protests with the bureau, (8) prepare reports regarding status of risks, and (9) advise employers and injured workers to seek legal representation. Id. at ¶ 18–29.

{¶ 12} However, the resolution also does not allow laypersons to (1) examine or cross-examine witnesses, (2) cite or interpret the law, (3) make or give legal interpretations regarding testimony, etc., (4) comment upon evidence regarding its credibility, weight, etc., (5) provide legal advice, (6) give or render a legal opinion, or (7) provide stand-alone representation for a fee. Id. at ¶ 30–36.

{¶ 13} We recognized in our previous holdings that within the workers' compensation system, laypersons could not represent clients for a contingent fee, advise clients of the legal ramifications of commission orders, or prepare a record. *CompManagement*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 55. Yet we found that these holdings do "not prohibit lay representation before the Industrial Commission, but instead mark the outer boundaries of permissible lay conduct." Id. at ¶ 69. We further determined that "there are multiple interests

to consider in determining whether a particular legal activity is acceptably performed by nonlawyers. In this way, we can freely assume that all representative conduct at the administrative level falls within the broad definition of the practice of law, yet still authorize lay representatives to perform certain functions in the administrative setting when the public interest so demands." Id.

{¶ 14} In *CompManagement*, we were compelled by "public interest" factors to permit lay representatives to participate in workers' compensation claims to the extent that their "representation" was consistent with the functions outlined in the commission's resolution. Id. at ¶ 70. We reasoned that allowing such representation expedited the claims process and made it less expensive. Id. at ¶ 44. Notably, we also recognized that " '[i]n the vast majority of instances no special skill is required in the preparation and presentation of [workers' compensation] claims.' " Id. at ¶ 67, quoting *Goodman v. Beall* (1936), 130 Ohio St. 427, 429, 5 O.O. 52, 200 N.E. 470.

{¶ 15} Other jurisdictions have also found that public-interest factors favor permitting a layperson to engage in what may be defined as the practice of law without crossing the limits into the unauthorized practice of law. See, e.g., *Conway–Bogue Realty Invest. Co. v. Denver Bar Assn.* (1957), 135 Colo. 398, 312 P.2d 998 (it is against the public interest to prohibit licensed real estate agents from preparing certain instruments that technically fall within the definition of the practice of law); *In re Opinion No. 26 of Unauthorized Practice of Law Commt.* (1995), 139 N.J. 323, 340, 654 A.2d 1344 ("We have often found, despite the clear involvement of the practice of law, that non-lawyers may participate in these activities [real estate closings and settlements], basing our decisions on the public interest in those cases in allowing parties to proceed without counsel"); *Unauthorized Practice of Law Commt. v. Dept. of Workers' Comp.* (R.I.1988), 543 A.2d 662, 666 ("We are of the opinion that the informal [workers' compensation] hearings, together with lay representation, may well serve the public interest"); *Perkins v. CTX Mtge. Co.* (1999), 137 Wash.2d 93, 102, 969 P.2d 93 ("Our underlying goal in unauthorized practice of law cases has always been the promotion of the public interest. Consequently, we have prohibited only those activities that involved the lay exercise of legal discretion because of the potential for public harm").

{¶ 16} In the instant case, public-interest factors persuade us that a corporate officer should be permitted to file and prepare a complaint on the corporation's behalf and to present the claimed value of the property at the BOR hearing subject to certain limitations.

## IV. Proceedings Before the BOR

{¶ 17} In holding that Woessner engaged in the unauthorized practice of law, the BTA relied on *Sharon Village*. Accordingly, we begin our analysis by

examining that case. In *Sharon Village*, a nonattorney third-party agent prepared and filed complaints on behalf of taxpayers with the Licking County Board of Revision. The agent "prepared legal documents, gave professional advice to his clients, and in one instance, even appeared before the BOR on their behalf." *Sharon Village*, 78 Ohio St.3d at 482, 678 N.E.2d 932. We held that the agent had engaged in the unauthorized practice of law, thereby depriving the BOR of jurisdiction to consider the property owners' complaints.

{¶ 18} At the time we decided *Sharon Village*, R.C. 5715.19(A)(1)(e) provided that "[a]ny person owning taxable real property in the county or in a taxing district with territory in the county * * * may file such a complaint * * *." 142 Ohio Laws, Part III, 4589.

{¶ 19} Although the case was not discussed in the BTA's opinion, we find that *Worthington City School Dist Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1999), 85 Ohio St.3d 156, 707 N.E.2d 499, is also relevant to our analysis. In *Worthington City School Dist.*, nonattorney corporate officers prepared and filed complaints on behalf of their corporations with the BOR. We held that the corporate officers had engaged in the unauthorized practice of law. We relied in part on *Sharon Village*. We also relied on the rule that "[a] corporate body cannot act through its corporate officers rather than through an attorney at law to maintain litigation on the corporation's behalf." *Worthington City School Dist.* at 158, 707 N.E.2d 499, citing *Union Sav. Assn. v. Home Owners Aid, Inc.* (1970), 23 Ohio St.2d 60, 52 O.O.2d 329, 262 N.E.2d 558.

{¶ 20} Subsequent to *Sharon Village* and *Worthington City School Dist.*, the General Assembly amended R.C. 5715.19 to provide that if the "person" owning the real property is a corporation, an officer of that corporation may file a complaint on behalf of the corporation with the BOR. 147 Ohio Laws, Part III, 5373–5374.[1] Because we are solely responsible for regulating the practice of law, we are not compelled to accept this legislative amendment. Yet we are mindful that all legislation is presumed constitutional and will not be struck down absent proof of its invalidity beyond a reasonable doubt. *State v. Hayden,* 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 7, citing *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

## A. *Sharon Village* Distinguished

{¶ 21} In *Sharon Village*, 78 Ohio St.3d at 481, 678 N.E.2d 932, one of our concerns in finding that the agent had engaged in the unauthorized practice of

---

1. Although the opinion in *Worthington City School Dist.* was issued one day after the effective date of the amendment of R.C. 5715.19, that amendment was not in effect and was not considered in arriving at the decision in *Worthington City School Dist.*

law was that a taxpayer would have no recourse if the *third-party* agent negligently prepared or filed the complaint. In *Sharon Village*, "the complaint was filed by a company whose business was making a profit filing valuation complaints, a sort of tax-valuation entrepreneur." *Worthington City School Dist.*, 85 Ohio St.3d at 162, 707 N.E.2d 499 (Stratton, J., concurring in part and dissenting in part). The practice of permitting representation by these third-party agents, who have no "real relationship with the taxpayer," is "potentially harmful to taxpayers." *Fravel v. Stark Cty. Bd. of Revision* (2000), 88 Ohio St.3d 574, 576, 728 N.E.2d 393 (Pfeifer, J., dissenting).

{¶ 22} Unlike the third-party agent in *Sharon Village*, corporate officers have a fiduciary duty to the corporation. See *Genesis Respiratory Servs., Inc. v. Hall* (1994), 99 Ohio App.3d 23, 28, 649 N.E.2d 1266. Thus, divided loyalties, one of the evils attendant to the unauthorized practice of law, are not at issue when a corporate officer is acting on behalf of his or her corporation. *CompManagement*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40.

{¶ 23} In *Sharon Village*, we were also concerned that preparing and filing a complaint, and appearing before the BOR, require legal training possessed only by an attorney. For example, we recognized that at a board of revision hearing, "the parties *may* be given an opportunity to present evidence in the form of documents and testimony, question and cross-examine witnesses, and make legal arguments in support of their positions." (Emphasis added.) Id. at 482, 678 N.E.2d 932. And if unusual legal issues exist, the BOR might request that the issues be briefed. Id. These activities would require the training and expertise of an attorney.

{¶ 24} Yet not all BOR proceedings involve legal issues. Many times, the only "issue before the boards of revision—the fair market value of real estate—is not one which requires legal skill to resolve." *Cleveland Bar Assn. v. Middleton* (1994), 66 Ohio Misc.2d 9, 14, 642 N.E.2d 71. Further, the board of revision proceedings "are not governed by the Rules of Evidence and typically the board members are not attorneys." Id. Thus, in many instances, formal legal training is not required to prepare and file the complaint or appear before the BOR.

{¶ 25} In the instant case, Woessner, who prepared and filed the complaint and appeared before the BOR, is an officer of the corporation that seeks to have its property value reviewed. Further, the proceedings before the BOR did not involve any legal issues, the examination of any witnesses, or any other matter that requires an attorney. Thus, we find that *Sharon Village* is distinguishable from the instant case to the extent that *Sharon Village* involved a third-party agent and envisioned a courtlike hearing before the BOR that involved witnesses and resolution of legal issues, while the case at bar involves a corporate officer and does not involve consideration of any legal issues.

## B. *Worthington City School Dist.* Limited

{¶ 26} We now must reexamine our decision in *Worthington City School Dist.* As we noted above, *Worthington City School Dist.*, 85 Ohio St.3d 156, 707 N.E.2d 499, relied in part on *Sharon Village* for the proposition that a nonattorney cannot file a complaint on behalf of another with the BOR. Id. at 160–161, 707 N.E.2d 499. To the degree that we have now distinguished *Sharon Village* from the instant case, we find that it no longer supports our holding in *Worthington City School Dist.* that a corporate officer is always prohibited from filing a complaint with the BOR.

{¶ 27} But our decision in *Worthington City School Dist.* also relied on the rule that " '[a] corporation cannot maintain litigation *in propria persona,* or appear in court through an officer of the corporation or an appointed agent not admitted to the practice of law.' " Id. at 160, 707 N.E.2d 499, quoting *Union Sav. Assn.,* 23 Ohio St.2d at 62, 52 O.O.2d 329, 262 N.E.2d 558.

{¶ 28} However, recently we held that a corporate officer who prepares and files a complaint and presents the claim in small-claims court does not engage in the unauthorized practice of law so long as he or she does "not cross-examine witnesses, argue, or otherwise act as an advocate." *Cleveland Bar Assn. v. Pearlman,* 106 Ohio St.3d 136, 2005-Ohio-4107, 832 N.E.2d 1193, ¶ 24. In our analysis, we recognized "the general rule that corporations may be represented only by licensed attorneys" (the "corporate representation rule"). Id. at ¶ 26. In holding that a corporate officer may prepare and file a complaint in small-claims court, we created a narrow exception to the corporate representation rule in cases "where no special legal skill is needed, and where proceedings are factual, nonadversarial, and expected to move quickly." Id. Although *Pearlman* involved small-claims court, we nevertheless find its exception to the corporate representation rule applicable in the instant case because the proceedings before the BOR did not involve any issue that required any "special legal skill" to resolve.

{¶ 29} We find that these circumstances call for us to limit our holding in *Worthington City School Dist.* to the extent that it is no longer necessary for a corporation to hire an attorney to file a complaint with the BOR unless legal issues exist or arise in the case.

## V. Public-Interest Factors

{¶ 30} We recognize that preparing and filing a complaint and participating in BOR proceedings on behalf of another fall within the broad definition of the practice of law. However, the amendment to R.C. 5715.19, our decision in *Pearlman,* and their effect on *Sharon Village* and *Worthington City School Dist.* have, to a degree, altered the unauthorized-practice-of-law landscape. We find that public-interest factors justify an exception to the rule in the instant case.

Specifically, corporate officers have a fiduciary duty to the corporation such that accountability and loyalty are not an issue in permitting them to act on behalf of the corporation. Further, assuming that no legal issues are involved or arise in the case before the BOR, hiring an attorney is not necessary, a situation that makes filing a complaint by a corporation more convenient and less expensive. See *Cultum v. Heritage House Realtors, Inc.* (1985), 103 Wash.2d 623, 628–631, 694 P.2d 630 (authorizing laypersons to exercise some legal discretion by allowing them to insert lawyer-drafted clauses into lawyer-drafted real estate forms because of strong public interest in convenience and cost savings).

{¶ 31} Yet consistent with our public-interest-exception cases, we temper our holding with the admonition that a corporation must hire an attorney if any of the proceedings before the BOR, including the preparation and filing of the complaint, involve more than the factual issue of the value of the property, and issues exist or arise that require an attorney to resolve.

{¶ 32} Thus, we hold that pursuant to R.C. 5715.19, a corporate officer does not engage in the unauthorized practice of law by preparing and filing a complaint with the board of revision and by presenting the claimed value of the property before the board of revision on behalf of his or her corporation, as long as the officer does not make legal arguments, examine witnesses, or undertake any other tasks that can be performed only by an attorney.

## VI. Conclusion

{¶ 33} In the instant case, Woessner was the corporate vice-president of Dayton Supply & Tool. Moreover, he was the sole owner of the corporation. Thus, we find that Woessner's accountability to the corporation is not an issue.

{¶ 34} Woessner testified that the value of the property was $103,860. However, he made no legal arguments and did not attempt to introduce any evidence at the hearing. Further, neither Woessner nor the school board presented any witnesses. Thus, the instant hearing did not address any legal issues, involve questioning of witnesses, or otherwise require legal training or expertise. Therefore, we hold that Woessner did not engage in the unauthorized practice of law.

{¶ 35} Accordingly, we reverse the decision of the BTA and remand the cause with instructions to consider Dayton Supply & Tool's appeal.

> Decision reversed
> and cause remanded.

PFEIFER, O'CONNOR and LANZINGER, JJ., concur.

MOYER, C.J., RESNICK and O'DONNELL, JJ., dissent.

ALICE ROBIE RESNICK, J., dissenting.

{¶ 36} The relevant precedents are well reasoned and require this court to hold that the actions undertaken in this case amount to the unauthorized practice of law. Therefore, I would affirm the decision of the Board of Tax Appeals ("BTA") that the Montgomery County Board of Revision ("BOR") did not have jurisdiction to entertain the complaint and that it should be dismissed.

{¶ 37} Because the majority carves out an unwarranted exception to the general rule forbidding the unauthorized practice of law, I dissent. Furthermore, I believe that the majority's method of analysis allows it to sidestep an important separation-of-powers issue raised by this case.

## I. *Sharon Village* and Related Cases

{¶ 38} As this court held in *Sharon Village, Ltd. v. Licking Cty. Bd. of Revision* (1997), 78 Ohio St.3d 479, 678 N.E.2d 932, syllabus, "[t]he preparation and filing of a complaint with a board of revision on behalf of a taxpayer constitute the practice of law." For various delineated reasons, the court concluded that the preparation and filing of a property-valuation complaint under R.C. 5715.13 and 5715.19 "should be left to an attorney to handle." Id. at 482, 678 N.E.2d 932.

{¶ 39} The court has adhered to that view in several later decisions. See, e.g., *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (2001), 91 Ohio St.3d 308, 313–314, 744 N.E.2d 751 (explaining that a nonattorney may prepare a property-valuation complaint for a corporation as long as the complaint is reviewed and signed by an attorney and filed by the attorney or at his or her direction); *Fravel v. Stark Cty. Bd. of Revision* (2000), 88 Ohio St.3d 574, 728 N.E.2d 393 (the nonattorney nephew of a taxpayer engaged in the unauthorized practice of law when he prepared and filed a property-valuation complaint on the taxpayer's behalf); *Lakeside Ave. Ltd. Partnership v. Cuyahoga Cty. Bd. of Revision* (1999), 85 Ohio St.3d 125, 707 N.E.2d 472 (a nonlawyer limited partner engaged in the unauthorized practice of law when he prepared and filed a property-valuation complaint challenging a county auditor's valuation of property owned by the partnership itself).

{¶ 40} In the post–*Sharon Village* case most like the present case factually, the court explained that "an attorney, or the owner of the property, must prepare and file the [property-valuation] complaint." *Worthington City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1999), 85 Ohio St.3d 156, 160, 707 N.E.2d 499. In that case—as in this one—a nonlawyer corporate officer had prepared, signed, and filed a property-valuation complaint on behalf of the officer's corporation that owned the property in question. This court held that the BTA had correctly dismissed that complaint and another similar one, because

the complainant's status as an officer of the corporation "d[id] not entitle him to engage in the unauthorized practice of law." Id.

{¶ 41} The court in *Worthington City School Dist.* was closely divided, with three justices dissenting in part. According to the dissent in that case, nonlawyer corporate officers should be permitted to prepare and file property-valuation complaints on behalf of their own corporations because those officers "are as competent to file these documents as an individual taxpayer would be," and they "are directly accountable to the body they represent." Id. at 164, 707 N.E.2d 499 (Stratton, J., dissenting). Nevertheless, a majority of the court rejected the dissenters' reasoning.

## II. R.C. 5715.19 Has Been Amended

{¶ 42} Less than two years after the court's decision in *Sharon Village*, the General Assembly voted to undo the impact of that decision and thereby widen the pool of persons who may file a property-valuation complaint on behalf of a property owner. As the title of the legislation explained, its purpose was to "amend sections 5715.13 and 5715.19 of the Revised Code to clarify who may file a complaint [challenging real-property assessments] with a county board of revision." 1998 Sub.H.B. No. 694, effective March 30, 1999, 147 Ohio Laws, Part III, 5373. The bill became law without the signature of the governor, id. at 5378, and it gave some nonattorneys, including corporate officers, the authority to file valuation complaints on behalf of property owners.

{¶ 43} The 1999 statutory changes remain in effect today, and R.C. 5715.19(A) now reads:

{¶ 44} "(1) * * [A] complaint against any of the following determinations for the current tax year shall be filed with the county auditor on or before the thirty-first day of March of the ensuing tax year * * *:

{¶ 45} " * * *

{¶ 46} "(d) The determination of the total valuation * * * of any parcel * * *.

{¶ 47} " * * *

{¶ 48} "Any person owning taxable real property in the county * * * [or] if the person is a * * * corporation, an officer * * * of that person * * * may file such a complaint regarding any such determination affecting any real property in the county * * *."

{¶ 49} Although the court has considered this statutory change in two recent tax cases, the court has not yet addressed the separation-of-powers question at issue in this case. See *Rubbermaid, Inc. v. Wayne Cty. Aud.*, 95 Ohio St.3d 358, 2002-Ohio-2338, 767 N.E.2d 1159, ¶ 9, and fn. 4 (holding that the 1999 statutory change cannot be applied retroactively to property-valuation complaints filed

before the change took effect and explaining that the resolution of that issue eliminated the need for the court to consider whether the General Assembly violated separation-of-powers principles "by enacting legislation infringing upon this court's power to regulate the practice of law"); *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (2001), 91 Ohio St.3d 308, 315, 744 N.E.2d 751 (holding that a property-valuation complaint had been properly signed by and filed by or at the direction of an attorney and explaining that it was therefore unnecessary for the court "to consider the constitutionality of that part of R.C. 5715.19 that purports to empower certain nonattorneys, including corporate officers, to file valuation complaints on behalf of others").

{¶ 50} The separation-of-powers issue that the court was able to skirt in earlier cases is squarely presented in this case. (The BTA did not address the question, but that board "is an administrative agency, a creature of statute, and is without jurisdiction to determine the constitutional validity of a statute." *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St.3d 229, 520 N.E.2d 188, paragraph one of the syllabus.) Under the court's 1997 *Sharon Village* decision and its progeny, the property-valuation complaint in this case was defective because it was signed and filed by a nonattorney on behalf of a corporation. *Sharon Village*, 78 Ohio St.3d 479, 678 N.E.2d 932. Yet under the 1999 amendment to R.C. 5715.19, the complaint in this case was proper, because it was filed in 2003 by "an officer" of a corporation "owning taxable real property in the county." R.C. 5715.19(A)(1).

### III. Analysis

{¶ 51} To resolve whether the actions undertaken in this case amounted to the unauthorized practice of law, the court should consider two questions. First, does R.C. 5715.19 unconstitutionally infringe on separation-of-powers principles? If it does not, then the statute controls, and no unauthorized practice occurred. However, if the answer to the question is yes, and the statute is unconstitutional and does not control, the second question is whether the court should continue to follow the precedents established in *Sharon Village* and related cases.

{¶ 52} The majority proceeds directly to the second question, in the process devaluing the relevant precedents to explain them away. In that way, the majority avoids answering the first question, sidestepping the necessity of considering whether current R.C. 5715.19 is unconstitutional on separation-of-powers grounds. Although it is true that this court will ordinarily not determine the constitutionality of a statute when a case can be resolved on nonconstitutional grounds, the precedents should not so readily be minimized. Therefore, the separation-of-powers issue must be addressed first.

## A. Separation of Powers

{¶ 53} On the first question, the current version of R.C. 5715.19 is unconstitutional because the General Assembly has—through the 1999 changes to the statute—given nonattorneys the authority to perform an activity that this court has described as the practice of law and has said must be "left to an attorney to handle." *Sharon Village*, 78 Ohio St.3d at 482, 678 N.E.2d 932.

{¶ 54} The separation-of-powers doctrine "implicitly arises from our tripartite democratic form of government and recognizes that the executive, legislative, and judicial branches of our government have their own unique powers and duties that are separate and apart from the others." *State v. Thompson* (2001), 92 Ohio St.3d 584, 586, 752 N.E.2d 276. The doctrine's purpose "is to create a system of checks and balances so that each branch maintains its integrity and independence." Id.

{¶ 55} Section 2(B)(1)(g), Article IV of the Ohio Constitution gives this court "original jurisdiction" over "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Both before and after that provision was adopted in 1968, this court has staked out its exclusive authority to define the practice of law and to regulate those who provide legal services. See, e.g., *Disciplinary Counsel v. Alexicole, Inc.*, 105 Ohio St.3d 52, 2004-Ohio-6901, 822 N.E.2d 348, ¶ 8 ("Section 2(B)(1)(g), Article IV of the Ohio Constitution confers on this court exclusive jurisdiction over all matters related to the practice of law. * * * [A] corporation cannot lawfully engage in the practice of law, and it cannot lawfully engage in the practice of law through its officers who are not licensed to practice law"); *Shimko v. Lobe*, 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, ¶ 15 ("it has been methodically and firmly established that the power and responsibility to admit and discipline persons admitted to the practice of law, to promulgate and enforce professional standards and rules of conduct, and to otherwise broadly regulate, control, and define the procedure and practice of law in Ohio rest[ ] inherently, originally, and exclusively in the Supreme Court of Ohio"); *Judd v. City Trust & Sav. Bank* (1937), 133 Ohio St. 81, 85, 10 O.O. 95, 12 N.E.2d 288 ("In Ohio, the power to regulate, control and define the practice of law reposes in the judicial branch of the government").

{¶ 56} Despite this court's longstanding role in Ohio's governmental structure as the sole entity empowered to define the practice of law and to prevent the unauthorized practice of that profession, the current version of R.C. 5715.19 reflects an express attempt by the General Assembly to allow nonattorneys to perform an activity that this court has defined as the practice of law. The statute is unconstitutional because it allows nonattorneys to file property-valuation complaints on behalf of others despite this court's holding that the "preparation

and filing of a complaint with a board of revision on behalf of a taxpayer constitute the practice of law." *Sharon Village,* 78 Ohio St.3d 479, 678 N.E.2d 932, syllabus.

{¶ 57} Both Ohio appellate courts that have examined the separation-of-powers implications of R.C. 5715.19 have found the statute unconstitutional. See *C.R. Truman, L.P. v. Cuyahoga Cty. Bd. of Revision* (July 27, 2000), 8th Dist. No. 76713, 2000 WL 1038184, *4 ("Amended R.C. 5715.19(A) * * * permits non-attorneys to engage in what has been uniformly recognized as the practice of law"); *Whitehall City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision,* 10th Dist. Nos. 01AP–878 and 01AP–879, 2002-Ohio-1256, 2002 WL 416953, *4 ("the amended provisions of R.C. 5715.19, permitting a formerly unauthorized person to practice law in certain circumstances, are unconstitutional").

{¶ 58} It is true that the court's "ability to invalidate legislation is a power to be exercised only with great caution and in the clearest of cases," and "laws are entitled to a strong presumption of constitutionality." *Yajnik v. Akron Dept. of Health, Hous. Div.,* 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16. Yet the court has not hesitated to strike other legislative attempts to allow nonattorneys to engage in conduct that the court has defined as the practice of law. See, e.g., *Cleveland Bar Assn. v. Picklo,* 96 Ohio St.3d 195, 2002-Ohio-3995, 772 N.E.2d 1187 (striking statutes that allowed nonattorneys to file forcible-entry-and-detainer complaints in the municipal courts on behalf of property owners).

{¶ 59} As one Ohio appellate court said many decades ago, the General Assembly "has no power to authorize any person or corporation to practice law. That is solely and exclusively the function of the Supreme Court of Ohio." *Dworken v. Guarantee Title & Trust Co.* (1932), 12 Ohio Law Abs. 399, 400, affirmed sub nom. *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650.

{¶ 60} The United States Supreme Court has stated, "One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule." *Union Pac. RR. Co. v. United States* (1878), 99 U.S. 700, 718, 25 L.Ed. 496. The separation-of-powers doctrine "is a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict." *Plaut v. Spendthrift Farm, Inc.* (1995), 514 U.S. 211, 239, 115 S.Ct. 1447, 131 L.Ed.2d 328.

{¶ 61} This court has clearly and consistently held since 1997 in *Sharon Village* and in other later cases that a nonattorney may not prepare and file a property-valuation complaint on behalf of another property owner. Any nonlawyer who flouts that requirement violates both Gov.Bar R. VII (regulating the unauthorized

practice of law) and R.C. 4705.07(A)(3) (barring nonattorneys from "any act that is prohibited by the supreme court as being the unauthorized practice of law").

{¶ 62} By authorizing nonlawyers to perform an activity that the court has defined as the practice of law, the General Assembly has tried to interfere in this court's performance of a duty that the Constitution has conferred exclusively on the judicial branch. Like the two Ohio appellate courts that have examined the question, this court should hold that R.C. 5715.19 is unconstitutional because it violates separation-of-powers principles.

{¶ 63} Given that R.C. 5715.19 is unconstitutional, *Sharon Village* and its progeny remain binding precedents, and under those decisions the property-valuation complaint filed by a nonlawyer corporate officer of Dayton Supply & Tool was defective because Dayton Supply & Tool—not the officer—was the owner of the property in question.

### B. Characterizing the Precedents

{¶ 64} Given the resolution of the first question, the second question to be answered is whether this court should continue to follow its precedents. As stated previously, the majority makes answering this second question the sole ground of its analysis. Although the majority chooses to "distinguish" *Sharon Village*, 78 Ohio St.3d 479, 678 N.E.2d 932, and to "limit" *Worthington City School Dist.*, 85 Ohio St.3d 156, 707 N.E.2d 499, it appears that the majority, in actuality, distinguishes *Sharon Village* to the point of rewriting it, and then uses that recasting as a basis to overrule *Worthington City School Dist.*, regardless of the terminology the majority employs. The majority adopts the view of the General Assembly found within the amendment to R.C. 5715.19, which matches the view of the dissent in *Worthington City School Dist.* Id. at 161–165, 707 N.E.2d 499. In the process, the majority's stated "limitation" of the decision in that case seems highly questionable due to the similarity of its facts to those in this case. Although the majority condones the preparation and filing of a complaint with a board of revision and the presentation of the claimed value before that board by a nonattorney corporate officer, this court in *Worthington City School Dist.* explicitly defined as the practice of law precisely these actions of preparing and filing a complaint with a board of revision on behalf of another.

{¶ 65} *Sharon Village, Worthington City School Dist.*, and related cases are certainly not outside the mainstream of this court's decisions on practice-of-law matters. See, e.g., *Cleveland Bar Assn. v. Woodman*, 98 Ohio St.3d 436, 2003-Ohio-1634, 786 N.E.2d 865 (nonattorney trustees of a nonprofit corporation engaged in the unauthorized practice of law when they prepared, signed, and filed administrative complaints with the Public Utilities Commission of Ohio on behalf of various governmental entities and officials); *Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650, paragraph one of the

syllabus ("The practice of law is not limited to the conduct of cases in court. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients").

{¶ 66} This court has long been hesitant to allow corporate officers to act on behalf of a corporation in legal or administrative proceedings. See *Union Sav. Assn. v. Home Owners Aid, Inc.* (1970), 23 Ohio St.2d 60, 64, 52 O.O.2d 329, 262 N.E.2d 558 ("To allow a corporation to maintain litigation and appear in court represented by corporate officers or agents only would lay open the gates to the practice of law for entry to those corporate officers or agents who have not been qualified to practice law and who are not amenable to the general discipline of the court").

{¶ 67} Dayton Supply & Tool has chosen to conduct its business operations as a corporation. With that choice come certain advantages and also certain limitations. One of those limitations is that, as a corporation, Dayton Supply & Tool is generally unable to represent itself in legal proceedings, as individuals can, but must hire an attorney. See, e.g., *Union Sav. Assn.*, 23 Ohio St.2d 60, 52 O.O.2d 329, 262 N.E.2d 558, syllabus ("A corporation cannot maintain litigation *in propria persona*, or appear in court through an officer of the corporation or an appointed agent not admitted to the practice of law").

{¶ 68} The majority goes to great lengths to relieve Dayton Supply & Tool of the obligation to engage an attorney when the company manifestly should have done so due to its status as a corporation. There are no compelling reasons to take that step. The majority's rationale based on "public-interest factors" underlying its conclusion is unconvincing. In particular, there is little connection between the fact that a corporate officer has a fiduciary duty to the corporation (and is accountable to that corporation) and the issue of whether this court should open the door to a nonattorney corporate officer taking the actions involving the complaint to the BOR that were taken in this case.

{¶ 69} In two very recent decisions, the court has allowed nonattorneys to represent other persons in legal proceedings. See *Cleveland Bar Assn. v. Pearlman*, 106 Ohio St.3d 136, 2005-Ohio-4107, 832 N.E.2d 1193, fn. 3 (rejecting a constitutional challenge to a statute that allowed "any bona fide officer or salaried employee" of a limited liability company to file claims and appear on behalf of the company in small claims court); *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 39 (allowing nonlawyers to appear and practice in a representative capacity before the Industrial Commission and the Bureau of Workers' Compensation and explaining that "in certain limited settings, the public interest is better served by authorizing laypersons to engage in conduct that might be viewed as the practice of law"). However, those

two decisions are narrow, limited to the specific situations presented in each, and of no precedential value to the instant case.

{¶ 70} Even though the majority does not term what it is doing as "overruling" any precedents, that is what for all practical purposes is actually occurring, especially as to *Worthington City School Dist.* Consequently, a legitimate question to ask is whether the majority is paying sufficient respect to the principle of stare decisis. As the United States Supreme Court has said, stare decisis is "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee* (1991), 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720. Stare decisis is a principle that means little if it simply applies to precedents with which the court agrees. The majority overturns settled law without a sufficiently valid justification for doing so.

## IV. Conclusion

{¶ 71} I disagree on two primary grounds with the majority's determination to carve out an exception for the circumstances of this case to the *Union Sav. Assn.* principle that a corporation is required to engage an attorney to handle its legal matters. First, the relevant part of R.C. 5715.19 is unconstitutional. Second, our precedents (particularly *Worthington City School Dist.)* are fully applicable to this case and should be followed. Because the decision of the BTA was reasonable and lawful, I would affirm that decision. Accordingly, I dissent.

MOYER, C.J., and O'DONNELL, J., concur in the foregoing dissenting opinion.

---

Coolidge, Wall, Womsley & Lombard and Merle F. Wilberding, for appellant.

David C. DiMuzio, Inc. and David C. DiMuzio, for appellee Dayton School District.