NFI METRO CENTER II ASSOCIATES, APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

NFI METRO CENTER I ASSOCIATES, APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *NFI Metro Ctr. II Assoc. v. Franklin Cty. Bd. of Revision* (1997), 78 Ohio St.3d 105.]

(Nos. 96–1406 and 96–1407—Submitted January 14, 1997—Decided April 2, 1997.)

106

*Baker & Hostetler* and *George H. Boerger,* for appellants.

*Ronald J. O'Brien,* Franklin County Prosecuting Attorney, and *Matthew H. Chafin,* Assistant Prosecuting Attorney, for appellees Franklin County Board of Revision and Franklin County Auditor.

*Teaford, Rich, Coffman & Wheeler* and *Jeffrey A. Rich,* for appellee Dublin Board of Education.

---

*Per Curiam.* We reverse the BTA's decision because the BTA did not support its findings on basic facts with sufficient, probative evidence of record. *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1997), 77 Ohio St.3d 402, 674 N.E.2d 696. In each decision, the BTA stated:

"[The appraisers'] methodologies diverged in their income approach analysis. Mr. Belfrage used as his starting point the actual rental income from the property. He determined that the actual rental income provided the most accurate projection of market rental income. Mr. Koon, however, used a stabilized rental figure. The preponderance of the evidence supports use of the stabilized rental figure. For instance, although net rental income for suburban office buildings in the Columbus area fell during the late 1980's and early 1990's, they substantially rose from 1992 onward. Net rents in the vicinity of the subject property increased from 1993 to 1994. The rents at the subject reflected the increases for the general market. During this same time period occupancy rates remained stable. Since rents were increasing from tax lien date onward, Mr. Belfrage's use of current rents as of January 1, 1993 undervalued the property.

"Their different approaches is [*sic*] further reflected in the capitalization rates chosen. Both appraisers used a direct capitalization approach to value the property. Mr. Koon used a stabilized net income to reflect the growth in the marketplace, whereas Mr. Belfrage used the average rates which were in effect around tax lien. However, the evidence shows that net rental income was increasing from 1992 onward. Therefore, Mr. Belfrage's use of the current market rents for 1992, without accounting for the growth which was occurring in the marketplace, understated the market value of the property."

As detailed above, Belfrage did not use current rents to calculate a value for the properties. Instead, he testified that he analyzed current rents. He testified, moreover, that he applied a market rent that was different from either of the average rentals disclosed in his rent-roll analyses. Belfrage also testified that he projected rent into the future to account for expected increases in rents. As to the BTA's questioning Belfrage's capitalization rate, Belfrage selected 11.6 percent for both properties, and Koon selected 11.5 percent for Metro Center I and 11 percent for Metro Center II.

Thus, the BTA's report of Belfrage's testimony is not correct. Based on this inaccurate report, the BTA reached the factual conclusions that Belfrage employed actual rents and that Belfrage did not consider increasing future rents. It then concluded that appellants had supplied insufficient evidence to sustain their burden of proof. Since the testimony and evidence do not support these basic factual conclusions, we must reverse the BTA's decisions and direct the BTA to determine values based on correct evidence. *Gen. Motors Corp. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 513, 516, 660 N.E.2d 440, 443; *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257, syllabus.

Appellants also contend that the BTA should have deducted refit expenses, which, if done, would reduce true value. On remand, the BTA will have an

opportunity to reconsider each appraiser's treatment of refit expenses. Belfrage treated them as a reserve for replacement and Koon testified that he had included these costs in the capitalization rate. In a more detailed opinion, the BTA can provide an analysis of this allowance.

Accordingly, we reverse the BTA's decisions because sufficient probative evidence does not support the factual conclusions it reached. Thus, its decisions are unreasonable.

*Decisions reversed*
*and causes remanded.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.