[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 105.]

NFI METRO CENTER II ASSOCIATES, APPELLANT, *v*. FRANKLIN COUNTY BOARD

OF REVISION ET AL., APPELLEES.

NFI METRO CENTER I ASSOCIATES, APPELLANT, *v*. FRANKLIN COUNTY BOARD

OF REVISION ET AL., APPELLEES.

[Cite as *NFI Metro Ctr. II Assoc. v. Franklin Cty. Bd. of Revision*,

1997-Ohio-231.]

*Taxation—Real property valuation of office buildings—Board of Tax Appeals'*
*valuation of property unreasonable and unlawful when sufficient*
*probative evidence of record does not support the factual conclusions*
*reached.*

(Nos. 96-1406 and 96-1407—Submitted January 14, 1997—Decided April 2,

1997.)

APPEALS from the Board of Tax Appeals, Nos. 95-J-80 and 95-J-79.

————————————

{¶ 1} NFI Metro Center Associates I, appellant, owns Metro Center I, an office building in Dublin, Ohio; NFI Metro Center Associates II, appellant, owns Metro Center II, also an office building in Dublin. Each appellant filed a complaint with the Franklin County Board of Revision ("BOR") seeking to revalue each respective property for the tax year 1993. The Dublin Board of Education ("Dublin"), appellee, filed counter-complaints in each case.

{¶ 2} The BOR reduced the value to $5,000,000 for Metro Center I and affirmed the auditor's value of $7,000,000 for Metro Center II. Appellants appealed these decisions to the Board of Tax Appeals ("BTA").

{¶ 3} At the BTA, appellants presented the testimony of Eric E. Belfrage, an expert real estate appraisal witness. Belfrage testified that he did not value the leases in place but, instead, "looked at the market rents at the time of January 1, 1993,

processed market expenses and applied market cap[italization] rates. We utilized office rental comparables in the immediate area; Metro Center I, II, IV, V and the Office at Metro Center all within the immediate market area." He supplied a rent roll for both properties, which disclosed that the average rent for Metro Center I was $15.80 per square foot, and for Metro Center II, $11.25 per square foot. In each appraisal, he selected $13.50 per square foot as the full-service rental amount. Belfrage also testified that he attempted to recognize the stabilized net operating income and considered future rent expectations in determining his net income.

{¶ 4} Belfrage also deducted an amount as a reserve for replacement, which he called "refit expenses." According to his testimony, appellants provide such things as new carpeting or new wall coverings to entice existing tenants to release their space. In any event, he testified that the true value in money for Metro Center I was $4,350,000, and for Metro Center II, $6,000,000.

{¶ 5} Dublin presented the expert appraisal testimony of Samuel D. Koon. Koon testified that the true value for Metro Center I was $5,000,000, and $6,900,000 for Metro Center II. He testified that he included tenant refit expenses in the capitalization rate but was unable to quantify a specific number attributable to these expenses. He extracted a capitalization rate from the market data and assumed that the investors in the comparable sales included an element for tenant refit costs in the capitalization rate.

{¶ 6} In both cases, the BTA found that appellants had "not submitted sufficient evidence to support the reduction requested." The BTA determined that the true value of the subject properties as of January 1, 1993, was $5,000,000 for Metro Center I, and $6,900,000 for Metro Center II. We have consolidated these matters for argument and decision.

{¶ 7} These causes are now before this court upon appeals as of right.

_____

*Baker & Hostetler* and *George H. Boerger*, for appellants.

*Ronald J. O'Brien*, Franklin County Prosecuting Attorney, and *Matthew H. Chafin*, Assistant Prosecuting Attorney, for appellees Franklin County Board of Revision and Franklin County Auditor.

*Teaford, Rich, Coffman & Wheeler* and *Jeffrey A. Rich*, for appellee Dublin Board of Education.

_____

***Per Curiam.***

**{¶ 8}** We reverse the BTA's decision because the BTA did not support its findings on basic facts with sufficient, probative evidence of record. *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1997), 77 Ohio St.3d 402, 674 N.E. 2d 696. In each decision, the BTA stated:

"[The appraisers'] methodologies diverged in their income approach analysis. Mr. Belfrage used as his starting point the actual rental income from the property. He determined that the actual rental income provided the most accurate projection of market rental income. Mr. Koon, however, used a stabilized rental figure. The preponderance of the evidence supports use of the stabilized rental figure. For instance, although net rental income for suburban office buildings in the Columbus area fell during the late 1980's and early 1990's, they substantially rose from 1992 onward. Net rents in the vicinity of the subject property increased from 1993 to 1994. The rents at the subject reflected the increases for the general market. During this same time period occupancy rates remained stable. Since rents were increasing from tax lien date onward, Mr. Belfrage's use of current rents as of January 1, 1993 undervalued the property.

"Their different approaches is [*sic*] further reflected in the capitalization rates chosen. Both appraisers used a direct capitalization approach to value the property. Mr. Koon used a stabilized net income to reflect the growth in the marketplace, whereas Mr. Belfrage used the average rates which were in effect around tax lien. However, the evidence shows that net rental income was increasing from 1992

onward. Therefore, Mr. Belfrage's use of the current market rents for 1992, without accounting for the growth which was occurring in the marketplace, understated the market value of the property."

**{¶ 9}** As detailed above, Belfrage did not use current rents to calculate a value for the properties. Instead, he testified that he analyzed current rents. He testified, moreover, that he applied a market rent that was different from either of the average rentals disclosed in his rent-roll analyses. Belfrage also testified that he projected rent into the future to account for expected increases in rents. As to the BTA's questioning Belfrage's capitalization rate, Belfrage selected 11.6 percent for both properties, and Koon selected 11.5 percent for Metro Center I and 11 percent for Metro Center II.

**{¶ 10}** Thus, the BTA's report of Belfrage's testimony is not correct. Based on this inaccurate report, the BTA reached the factual conclusions that Belfrage employed actual rents and that Belfrage did not consider increasing future rents. It then concluded that appellants had supplied insufficient evidence to sustain their burden of proof. Since the testimony and evidence do not support these basic factual conclusions, we must reverse the BTA's decisions and direct the BTA to determine values based on correct evidence. *Gen. Motors Corp. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 513, 516, 660 N.E.2d 440, 443; *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257, syllabus.

**{¶ 11}** Appellants also contend that the BTA should have deducted refit expenses, which, if done, would reduce true value. On remand, the BTA will have an opportunity to reconsider each appraiser's treatment of refit expenses. Belfrage treated them as a reserve for replacement and Koon testified that he had included these costs in the capitalization rate. In a more detailed opinion, the BTA can provide an analysis of this allowance.

**{¶ 12}** Accordingly, we reverse the BTA's decisions because sufficient probative evidence does not support the factual conclusions it reached. Thus, its decisions are unreasonable.

*Decisions reversed*

*and causes remanded.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

_____