WORTHINGTON CITY SCHOOLS BOARD OF EDUCATION, APPELLEE, *v.*

FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES; BOB-O-LINK

GOLF COURSE, LTD., N.K.A. WEBER SISTERS ENTERPRISES, LTD., APPELLANT.

[Cite as *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,*

124 Ohio St.3d 27, 2009-Ohio-5932.]

*Taxation — Real property valuation — Board of Tax Appeals must give full consideration to whether sale of property was recent with respect to the tax years involved.*

(No. 2008-2365 — Submitted August 25, 2009 — Decided November 17, 2009.)

APPEAL from the Board of Tax Appeals, No. 2006-H-381.

_____

**Per Curiam.**

{¶ 1} Appellant, Bob-O-Link Golf Course, Ltd., n.k.a. Weber Sisters Enterprises, Ltd. ("Weber Sisters"), appeals from a decision of the Board of Tax Appeals ("BTA") in which the BTA determined that the May 2003 sale price of a four-acre commercial parcel constituted the value of the property for tax years 2004 and 2005. The auditor originally valued the property for tax year 2004 at $2,680,000, and the Board of Education of the Worthington City Schools ("school district") filed a complaint against that valuation on February 18, 2005. The school district presented the May 2003 deed and conveyance-fee statement showing sale of the property for $4,175,000, and urged that the sale price constituted the value of the property. The Franklin County Board of Revision, after hearing the evidence presented by Weber Sisters, rejected the sale price and reverted to the auditor's valuation of the property.

{¶ 2} The school district appealed to the BTA. The owner did not appear at the BTA hearing, but the school board and the county did. The school

board presented a purchase contract that it had obtained through discovery to bolster its contention that the BTA should use the sale price to value the property. On November 12, 2008, the BTA issued its decision, which adopted the sale price as the value of the property.

{¶ 3} On appeal, Weber Sisters argues that the school district failed to discharge its burden of proof as the appellant from the BOR's rejection of the sale price, and that the BTA's findings are not supported by the evidence. In one respect, we agree. The BTA failed to give full consideration to whether the sale was "recent" with respect to the lien dates for tax year 2004 and tax year 2005. We therefore vacate and remand.

**Facts**

{¶ 4} On February 18, 2005, the school board filed its complaint against the valuation of Weber Sisters' property, asking that the BOR adopt the May 2003 sale price of $4,175,000 as the value of the property. Weber Sisters filed a countercomplaint on April 15, 2005, which asked that the auditor's valuation of $2,680,000 be retained because the complaint constituted a second filing within the same triennial period. The parcel consists of four acres and is improved with two buildings.

{¶ 5} On February 22, 2006, the BOR held a hearing. Weber Sisters presented the testimony of Sally Marrell and Jodie Govenar, principals of Weber Sisters, along with exhibits that included a rent roll and an appraisal that was offered not as direct evidence of value, but rather as documentation of Weber Sisters' vain attempt to sell the property.

{¶ 6} The testimony indicated that Weber Sisters' purchase was predicated on the seller's leasing most of the space in the two buildings, each of which comprised 7,500 square feet of commercial space. Ms. Marrell stated that the "price we paid was for totally occupied units," meaning in this case that the sale would occur with leases in place for 11,740 of the 15,000 total square feet.

But immediately after the May 2003 sale it became clear that two tenants slated to occupy the largest portions of the buildings – Boston Market and Fiesta Fresh – would not take possession. The former initially honored rent obligations; the latter did not.

**{¶ 7}** During 2004, Cold Stone Creamery began paying less and less and ultimately vacated its leased premises during 2005 and defaulted on its lease obligations. Another tenant, Mark Pi's, experienced financial difficulty and negotiated a rent reduction of approximately one-third. An Indian restaurant stopped paying rent as of November 2005. Another tenant, Robeck's Juice, subleased to Quizno's at a reduced rent while itself continuing to pay full rent. Only one tenant, a Starbucks, retained possession at the stated rent. Marrell stated that Weber Sisters was "operating at a total loss" as of the February 2006 hearing date.

**{¶ 8}** The testimony also confirmed that Weber Sisters acquired the property as part of a like-kind exchange pursuant to Section 1031, Title 25, U.S. Code. "The concept behind a 1031 exchange is that, when a property owner sells a property and reinvests its proceeds into another property, any economic gain has not been realized in a way that generates funds to pay any tax." *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision* (Jan. 13, 2009), BTA No. 2006-T-1804, at 7. Accordingly, the Internal Revenue Code defers the taxation of any gain from the sale of the property in this situation. Id. at 6. In the present case the consideration for the property acquired by Weber Sisters was a golf course worth approximately $2.4 million. Weber Sisters borrowed the difference between the value of the golf course and the $4,175,000 sale price.

**{¶ 9}** In 2005, Weber Sisters attempted to sell the property at issue. It received an offer of $3.9 million but after the purchaser's appraisal indicated a value of only $3 to $3.2 million, the purchaser backed out of the deal. At that point, Weber Sisters obtained a written appraisal from Koenig & Associates that

opined a value of $3,200,000 as of September 12, 2005. That appraisal was performed before problems emerged with the Indian restaurant and Cold Stone Creamery and Mark Pi's rent reduction.

{¶ 10} The testimony also indicated that the principals of Weber Sisters had no knowledge and received poor advice concerning commercial property development in central Ohio.

{¶ 11} In making its decision, the BOR first disposed of a jurisdictional objection raised by Weber Sisters. The owner contended that the school board's complaint violated R.C. 5715.19(A)(2) because the complaint was the second within a three-year period. The BOR noted that the May 2003 sale occurred after the lien date for tax year 2003, which was the subject of the first complaint, and held that the timing brought the current case within a statutory exception. On the merits, the BOR stated that the principals of Weber Sisters were "not necessarily knowledgeable buyers" and "not familiar with the Franklin County commercial market." Additionally, the BOR noted a "significant loss of tenants in calendar year 2003," and the owner's subsequent inability to sell the property. Based on these findings, the BOR rejected use of the May 2003 sale price as constituting the value of the property for tax year 2004 and 2005. The BOR adopted the value of $2,680,000 that had been assigned by the auditor.

{¶ 12} The school board appealed to the BTA. The school board served a written discovery request that, after the BTA issued an order compelling discovery, led to production of the purchase contract. On July 11, 2007, the BTA held a hearing at which the school board and the county appeared but the property owner did not. The purchase contract obtained through discovery was made an evidentiary exhibit.

{¶ 13} The BTA issued a decision on November 21, 2007. In that decision, the BTA ordered that the sale price be adopted as the value of the property. Weber Sisters filed a motion for reconsideration that reasserted its

4

jurisdictional objection: Weber Sisters reiterated its argument that the BOR had lacked jurisdiction because the tax-year-2004 complaint was the second complaint that the school board had filed within the triennium. On December 10, 2007, the BTA issued an order vacating the November 21 decision and requiring the school board to show cause why the matter should not be remanded to the BOR with the instruction that the case should be dismissed on jurisdictional grounds. The school board filed a response, and on May 20, 2008, the BTA issued an order finding that the school board's complaint for tax year 2004 was not barred by R.C. 5715.19(A)(2), because the auditor changed the value from tax year 2003 to tax year 2004. The BTA also scheduled a second merits hearing in the case, which the parties waived.

{¶ 14} On November 12, 2008, the BTA issued its decision. The BTA found that Weber Sisters "presented no competent or probative evidence challenging the arm's-length nature of the May 2003 sale * * * to rebut the presumption that the sale price is the best evidence of value." *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision* (Nov. 12, 2008), BTA No. 2006-H-381, at 5. As for the recency of the sale, the BTA confined itself to stating in a footnote that a sale eight months before the lien date for tax year 2004 qualified as recent. Accordingly, the BTA adopted the $4,175,000 sale price as the value of the property for tax years 2004 and 2005. Weber Sisters appealed to this court.

## Analysis

{¶ 15} Under our cases, the BTA is responsible for determining factual issues, but this court " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. Weber Sisters presents several legal issues, and we consider each in turn.

*R.C. 5715.19(A)(2) does not bar*

*the school board's complaint for tax year 2004*

{¶ 16} In its notice of appeal, Weber Sisters characterizes the present case as a "second filing within the same triennium and therefore prohibited by section 5715.19 O.R.C." In Weber Sisters' brief, however, the second-filing issue is mentioned at most in passing, is not specifically argued, and is not the subject of a proposition of law. Under these circumstances we would ordinarily regard the issue as abandoned. *E. Liverpool v. Columbiana Cty. Budget Comm.,* 116 Ohio St.3d 1201, 2007-Ohio-5505, 876 N.E.2d 575, ¶ 3.

{¶ 17} But we have consistently treated full compliance with R.C. 5715.19 as an indispensable prerequisite for the exercise of jurisdiction by a board of revision. See *Stanjim Co. v. Mahoning Cty. Bd. of Revision* (1974), 38 Ohio St.2d 233, 235, 67 O.O.2d 296, 313 N.E.2d 14; *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, paragraph one of the syllabus. An issue that pertains to the BTA's jurisdiction to hear the merits of an appeal thereby pertains derivatively to our own jurisdiction, and we have held that we possess authority to consider such jurisdictional issues in spite of a failure to specify the theory in its notice of appeal. *Elyria v. Lorain Cty. Budget Comm.*, 117 Ohio St.3d 403, 2008-Ohio-940, 884 N.E.2d 553, ¶ 13. Accordingly, we consider whether R.C. 5715.19(A)(2) barred the complaint the school board filed for tax year 2004.

{¶ 18} R.C. 5715.19(A)(2) limits how often an owner or a school board may challenge the valuation of a parcel: subject to four enumerated exceptions, a person may file only one complaint within a three-year "interim period." The statutory limitation ties the interim period to the sexennial revaluation of property and the triennial update required by law. R.C. 5713.01(B) and 5715.24(A); Ohio Adm.Code 5703-25-06(B) and 5703-25-06(D). If " 'a person, board, or officer' files a complaint in an interim period it may not file another complaint in the

same interim period, unless one or more of the four statutory circumstances listed * * * is alleged." *Specialty Restaurants Corp. v. Cuyahoga Cty. Bd. of Revision*, 96 Ohio St.3d 170, 2002-Ohio-4032, 772 N.E.2d 1165, ¶ 11, quoting R.C. 5715.19(A)(2).

{¶ 19} In the present case, the jurisdictional issue arises because the school board presented the May 2003 purchase price in a complaint that challenged the auditor's valuation for tax year 2003. Subsequently, the school board initiated the present case by filing a complaint seeking an increase for tax year 2004 on the basis of the May 2003 sale. The interim period in Franklin County encompassed tax years 2003 and 2004. *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision* (May 20, 2008), BTA No. 2006-H-381, at 3. Under the pronouncement of *Specialty Restaurants*, R.C. 5715.19(A)(2) bars the complaint in this case unless one (or more) of the four exceptions applies. As an initial matter, we note that the school board complied with the language of R.C. 5715.19(A)(2) by indicating on the complaint that the first of the four exceptions applied.

{¶ 20} We hold that two of the four exceptions applied. R.C. 5715.19(A)(2)(a) provides that a complaint asking for a change in value based on the sale of the property in an arm's-length transaction is not barred so long as (1) the sale occurred after the tax lien date for the tax year for which the prior complaint was filed – in this case, 2003 – and (2) the effect of the sale on value was "not taken into consideration with respect to the prior complaint." In this case, the sale took place in May 2003 – *after* the January 1, 2003 lien date to which the earlier complaint related. Moreover, although the May 2003 sale formed the basis for the tax-year-2003 complaint, the BOR set the value for 2003 without regard to the sale price because the buildings at issue were *only partially completed* as of January 1, 2003. Because the record shows that the construction was fully completed by January 1, 2004, and because the May 2003 sale

culminated a January 2003 purchase contract that contemplated completed construction, the effect of the May 2003 sale price on value was "not taken into consideration" under the statute for tax year 2003. Thus, the complaint is permitted under the exception at R.C. 5715.19(A)(2)(a).

{¶ 21} R.C. 5715.19(A)(2)(c) furnishes an additional source of jurisdiction. In essence, the valuation complaint presently before the court asserts that the sale price should be considered to be the value of the property on January 1, 2004 – the 2004 lien date – because the buildings, which constitute a "substantial improvement" for purposes of R.C. 5715.19(A)(2)(c), were completed after the 2003 lien date and before the 2004 lien date. As a result, R.C. 5715.19(A)(2)(c) applied to the present situation and permitted the filing of the tax-year-2004 complaint.

{¶ 22} In sum, the tax-year-2004 complaint is not barred by the filing of the tax-year-2003 complaint because (1) the tax-year-2004 complaint relies on a sale that occurred after the lien date of the 2003, the tax year that was the subject of the earlier complaint, and (2) the effect of the sale on the property's value was not considered previously because the construction on the property was incomplete.

*Collateral estoppel does not bar the school board's complaint*

{¶ 23} Weber Sisters also contends that the BOR's decision not to use the May 2003 sale price to determine the value of the property for tax year 2003 estops the school board from litigating the use of the sale price to value the property for tax year 2004. Our review of the record persuades us that Weber Sisters failed to establish the existence of an estoppel.

{¶ 24} The scope of collateral estoppel in tax proceedings is limited. We have acknowledged that the determination of a discrete issue as to one tax year may estop a party from relitigating the same issue in the context of a later valuation complaint. *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*,

122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 17, citing *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (Dec. 28, 1993), Franklin App. No. 92AP-1715, 1993 WL 540285. On the other hand, the ultimate issue of value for one tax year does not constitute the "same issue" for purposes of collateral estoppel as the ultimate issue of value for a later tax year. Id. Given these precepts, it is incumbent upon the party that asserts collateral estoppel to prove the identity between the issue currently presented and the issue previously decided. *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 198, 2 OBR 732, 443 N.E.2d 978; see also *Dublin School Dist. Bd. of Edn. v. Limbach* (1994), 69 Ohio St.3d 255, 257-258, 631 N.E.2d 604; *Beatrice Foods Co., Inc. v. Lindley* (1982), 70 Ohio St.2d 29, 35, 24 O.O.3d 68, 434 N.E.2d 727.

{¶ 25} In the present case some evidence was offered at the BTA concerning the BOR's disposition of the tax-year-2003 complaint. That evidence indicates that the BOR declined to regard the May 2003 sale price as indicative of value for tax year 2003 because the two buildings were still under construction on January 1, 2003. But the evidence also indicates that the buildings were complete by January 1, 2004. As a result, Weber Sisters has fallen well short of proving an identity of issues, because the question whether to use the sale price for 2004 does not involve the same issue whether to use the sale price for 2003. Accordingly, the BOR's disposition of the tax-year-2003 complaint has no collateral-estoppel effect on the later complaint.

*The BTA erred by failing to give full consideration*
*to whether Weber Sisters had proven that the sale was not "recent"*
*as to the lien dates for 2004 and 2005*

{¶ 26} The gravamen of the Weber Sisters' appeal lies in its contentions that the BTA's decision lacks evidentiary support and that the BTA failed to hold the school board to its burden of proof.

**{¶ 27}** As an initial matter, Weber Sisters' argument relies on well-settled legal principles. We have held that the BTA's findings must be supported by evidence; indeed, when the evidence does not support those findings, they must be set aside on appeal. E.g., *NFI Metro Ctr. II Assoc. v. Franklin Cty. Bd. of Revision* (1997), 78 Ohio St.3d 105, 107, 676 N.E.2d 881; *Gen. Motors Corp. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 513, 515-516, 660 N.E.2d 440. Moreover, when "cases are appealed from a board of revision to the BTA, the burden of proof is on the appellant, whether it be a taxpayer or a board of education, to prove its right to an increase or decrease from the value determined by the board of revision." *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision* (2001), 90 Ohio St.3d 564, 566, 740 N.E.2d 276. That burden requires the appellant to "present competent and probative evidence to make its case; it is not entitled to a reduction or an increase in valuation merely because no evidence is presented against its claim." Id., citing *Hibschman v. Bd. of Tax Appeals* (1943), 142 Ohio St. 47, 26 O.O. 239, 49 N.E.2d 949. Additionally, when a hearing has been waived before the BTA, the BTA has the duty to "make its own independent judgment based on its weighing of the evidence contained in [the] transcript" of the proceedings before the BOR. *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1996), 76 Ohio St.3d 13, 15, 665 N.E.2d 1098.

**{¶ 28}** Turning to the school board's burden of proof at the BTA, we conclude that the BTA was justified in viewing the conveyance-fee statement and the deed that the school board had presented to the BOR as constituting a prima facie showing of value. Id. at 16, 665 N.E.2d 1098 (because the school board had introduced into evidence of a copy of a deed and a conveyance-fee statement as proof of a recent, arm's-length sale, the burden to prove a lesser value shifted to the property owner). In the present case, the school board additionally presented to the BTA a purchase agreement that it had obtained through discovery. The

troika of deed, conveyance-fee statement, and purchase agreement formed an adequate basis for the BTA to find a recent arm's-length sale, subject to rebuttal by the Weber Sisters.

{¶ 29} As we stated in *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13, a recent arm's-length-sale price must ordinarily be considered to be the value of the property. Usually the "only rebuttal" of the sale price "lies in challenging whether the elements of recency and arm's-length character between a willing seller and a willing buyer are genuinely present for that particular sale." Id.

{¶ 30} For its part, the BTA relied on its holding that the evidence did not impugn the arm's-length character of the sale. Specifically, the BTA acknowledged that Weber Sisters had pointed to several factors in challenging the arm's-length character of the sale: the like-kind exchange facet of the sale, their own lack of knowledge of the local market, their inability to resell, or their loss of tenants. But the BTA found that the owner had failed to show the significance of those factors for purposes of determining the question of arm's-length character. Weber Sisters has not pointed to any distinctly legal error in the BTA's discussion of the arm's-length character, and accordingly we will defer to the BTA's finding that the May 2003 sale was at arm's length. *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483 ("The BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations, we will affirm"). [1]

---

1. Weber Sisters' contention that the sale was not at arm's length because the property was not sold on the "open market" does not state a claim of legal error. We have held that the opponent of using the sale price to determine value must shoulder the burden to show that the sale did not occur in the market that is relevant in the particular case – here, the Section 1031 like-kind-exchange market. See *AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830, ¶ 22, 23. Weber Sisters has made no such showing.

**{¶ 31}** The BTA's treatment of the issue of recency is another matter. That issue the BTA relegated to a footnote, where the board stated that a "sale within eight months of the 2004 tax lien date is sufficiently recent for tax valuation purposes." *Worthington City Schools Bd. of Edn.*, BTA No. 2006-H-381, at 4, fn. 3. But the BOR, in rejecting the sale price, had explicitly relied on several pieces of evidence that potentially bear on the issue of recency: the immediate loss of tenants, the subsequent failure to sell the property, and the lower values reflected by later appraisals. The BOR appeared to regard such factors as establishing a change in circumstances that made it inappropriate to use the May 2003 sale price to value the property as of January 1, 2004, and January 1, 2005.

**{¶ 32}** As noted, the BTA found that the sale was recent based solely on the temporal proximity of the sale date to the lien date. But under our case law such proximity is not the sole factor affecting recency. See *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 35 (recency "encompasses all factors that would, by changing with the passage of time, affect the value of the property"); *New Winchester Gardens, Ltd. v. Franklin Cty. Bd. of Revision* (1997), 80 Ohio St.3d 36, 44, 684 N.E.2d 312 (recency factors include "changes that have occurred in the market"). Before the BTA, Weber Sisters specifically argued not only that the evidence presented to the BOR negated the arm's-length character of the sale, but also that "market changes and other factors make the sale price unreliable" on the record of this case. Yet the BTA did not address this aspect of Weber Sisters' argument. It follows that the BTA erred by not considering the evidence upon which the BOR relied when it made its finding as to the recency of the May 2003 sale. See *Columbus Bd. of Edn.*, 76 Ohio St.3d at 15, 665 N.E.2d 1098.

**{¶ 33}** Before this court, Weber Sisters renews its argument that the BOR transcript clearly showed "change in the property" and "market changes and other

factors that [make] the sale price unreliable." We have stated that the burden lay on Weber Sisters to rebut the presumptive recency of the sale, but it is evident that the BOR found such a rebuttal in the record before it. The BTA did not identify any error in the BOR's reasoning and, if the evidence that Weber Sisters presented to the BOR did tend to negate recency, then the school board acquired the burden of rebutting the probative force of that evidence. See *Mentor Exempted Village Bd. of Edn. v. Lake Cty. Bd. of Revision* (1988), 37 Ohio St.3d 318, 319, 526 N.E.2d 64.

{¶ 34} Although the BTA's latitude in weighing evidence is broad, we have held that the BTA "has the duty to state what evidence it considered relevant in reaching its determination." *HealthSouth Corp. v. Levin*, 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, ¶ 34. While we accord deference to the BTA's explicit determination that Weber Sisters had not impugned the arm's-length character of the sale, we hold that the BTA did not perform the required review with respect to whether the May 2003 sale met the criteria of recency as of January 1, 2004, and January 1, 2005. Accordingly, we vacate the BTA's decision and remand for a determination whether the May 2003 sale was "recent" as to tax years 2004 and 2005 in light of the entire record. As in *HealthSouth*, the parties have had ample opportunity to present evidence, so the BTA shall not take additional evidence on remand.

{¶ 35} We emphasize that we do not prejudge the outcome of the BTA's analysis on remand. The BTA will have the duty to weigh the significance of the purchase contract, the other documentation of sale, and the testimony and documentation presented to the BOR to make its determination.

## Conclusion

{¶ 36} For the reasons set forth, we vacate the BTA's decision and remand for further proceedings in accordance with this opinion.

Decision vacated

SUPREME COURT OF OHIO

and cause remanded.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., concurs in judgment only.

_____

Rich & Gillis Law Group, L.L.C., Jeffrey A. Rich, and Mark H. Gillis, for appellee Worthington City Schools Board of Education.

Wayne E. Petkovic, for appellant.

_____

14