[Cite as *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 63, 2010-Ohio-4907.]

CINCINNATI SCHOOL DISTRICT BOARD OF EDUCATION, APPELLANT, *v.*

HAMILTON COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*,

127 Ohio St.3d 63, 2010-Ohio-4907.]

*Taxation — Real property valuation — Foreclosure sale does not ordinarily
qualify as an arm's-length transaction because it occurs under
compulsion — Decision reversed.*

(No. 2009-1405 — Submitted June 9, 2010 — Decided October 12, 2010.)

APPEAL from the Board of Tax Appeals, No. 2007-A-1196.

_____

**Per Curiam.**

**{¶ 1}** This is an appeal from a decision of the Board of Tax Appeals
("BTA") in a real property valuation case. The BTA affirmed the reduction
ordered by the Hamilton County Board of Revision ("BOR"), which was based on
the price paid by Fenco Development Company in a foreclosure sale. The
Cincinnati School District Board of Education ("school board") contends that the
sale price was not indicative of value because the foreclosure sale did not qualify
as an arm's-length transaction. Additionally, the school board argues that the
corporate taxpayer's president engaged in the unauthorized practice of law during
the BTA hearing and that such conduct raised a jurisdictional bar to the BTA's
decision.

**{¶ 2}** On the jurisdictional issue, we disagree with the school board.
Once the filing of a valid complaint or notice of appeal vests jurisdiction in the
board of revision or the BTA, a later instance of the unauthorized practice of law
during the proceedings does not retroactively divest the tribunal of jurisdiction.

Accordingly, we need not decide whether the unauthorized practice of law occurred in this case, because that fact is without jurisdictional consequence.

{¶ 3} We do agree, however, that the record shows a foreclosure sale that does not establish the property's value pursuant to R.C. 5713.03. See R.C. 5713.04 ("The price for which such real property would sell at auction or forced sale shall not be taken as the criterion of its value"). A foreclosure sale usually does not qualify as an arm's-length transaction because the sale occurs under the compulsion that the property be liquidated for the benefit of creditors. Moreover, the BTA's finding in this case that the foreclosure sale was voluntary is not supported by reliable and probative evidence, and because the record does not furnish a basis on which the BTA could perform an independent valuation, we reverse the decision of the BTA and reinstate the auditor's valuation of the property for tax purposes.

**Facts**

{¶ 4} On March 30, 2007, Craig Fennel, president of Fenco Development Company, an S corporation, filed a complaint on behalf of the company against the auditor's valuation of a 30,600-square-foot apartment building that the company had acquired as of February 27, 2006. The auditor had assigned a true value of $479,600 for tax year 2006; Fenco claimed that the property's value was equal to the sale price of $135,000, the price Fenco paid the United States Department of Housing and Urban Development ("HUD") at a foreclosure auction. The BOR held a hearing on September 10, 2007, at which Fennel testified.

{¶ 5} Fennel stated that the property had been vacant for two years. Although the property had been in contract shortly before his company's purchase, the winning bidder could not close. Fennel outbid two other auction bidders at $135,000, and at the hearing, he offered the HUD settlement statement and a document titled "Terms and Requirements of Foreclosure Sale —

Acknowledgment by Bidder." Those documents and the conveyance-fee statement established the sale price in the context of a foreclosure sale conducted by HUD. In addition to the basic documents, Fennel submitted photographs indicating the run-down condition of the property. He testified that he was holding the property on a speculative basis, waiting for other properties to be improved before improving his own.

{¶ 6} In contrast, the auditor submitted a "Real Estate Department Report" prepared by one of its staff appraisers, opining that "no sufficient claim or documentation has been presented to reduce the subject property to the $135,000 sought by the property owner." Although the appraiser agreed that the condition of the property was "deplorable," she testified at the BOR hearing that the conveyance-fee statement indicated a foreclosure sale, "which does not indicate a market sale."

{¶ 7} The BOR characterized the evidence as showing a run-down property that had proved difficult to sell through auction, concluding that the sale price indicated the value of the property under the circumstances.

{¶ 8} The school board appealed to the BTA, which held its hearing on March 4, 2009. Fennel appeared and presented four exhibits: photographs documenting the run-down condition of the property; the auditor's notification for tax year 2008 updating the property value to $136,350 from $135,000; and two HUD settlement statements, the first relating to an attempted sale for $506,000, and the second relating to Fenco Development Company's purchase in February 2006.

{¶ 9} Fennel testified that the first settlement statement showed an attempted sale for $506,000, and he explained that the photographs documented the building's need for renovation before tenant occupancy: throughout the building's 37 units, the copper had been completely stripped, every kitchen and bathroom had been destroyed, the street-side windows were boarded up, and all

external doors were bolted shut. Fennel estimated that the cost of rehabilitation was at least $10,000 per unit. Finally, he testified about the blighted condition of a portion of the surrounding neighborhood.

{¶ 10} In its decision, the BTA noted that an arm's-length sale must be voluntary and also that R.C. 5713.04 expressly prohibits viewing auction or forced-sale prices as the criterion of value for the property. But the BTA found that in a number of its own cases, the "sale prices of parcels sold at auction are nevertheless the best evidence of value when all of the elements of an arm's-length sale are present." *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (July 7, 2009), BTA No. 2007-A-1196, 2009 WL 1999014, *4. Its review of the record persuaded the BTA that the "public sale was carried out voluntarily by the seller" and that the "auction, per se, contain[ed] the elements of an arm's-length transaction." Id. As a result, the BTA concluded that the sale was an arm's-length transaction "upon which the BOR properly relied in valuing the property for tax year 2006." Id. Accordingly, the BTA affirmed the BOR's use of the sale price of $135,000 as the value of the property for 2006. Id.

{¶ 11} The school board has appealed, and we now reverse.

**Analysis**

{¶ 12} The BTA is responsible for determining factual issues, but we " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. The school board presents two legal issues, one concerning jurisdiction, and one on the merits.

*The BTA and the BOR had jurisdiction to render their decisions in this case*

{¶ 13} First, we address the school board's contention that a jurisdictional impediment arose in the context of the BTA hearing. Jurisdictional objections typically raise an issue of law for resolution by the court. See *Toledo v. Levin*,

117 Ohio St.3d 373, 2008-Ohio-1119, 884 N.E.2d 31, ¶ 26, fn. 3; *Toledo Pub. Schools Bd. of Edn. v. Lucas Cty. Bd. of Revision*, 124 Ohio St.3d 490, 2010-Ohio-253, 924 N.E.2d 345, ¶ 14, fn. 2.  According to the school board, Craig Fennel, who is president of Fenco but not a lawyer, engaged in activity at the hearing that amounts to the unauthorized practice of law.

{¶ 14} At the outset, Fennel did prepare and submit the valuation complaint as an officer of the corporate owner, an activity that the school board concedes is permissible pursuant to *Dayton Supply & Tool Co., Inc. v. Montgomery Cty. Bd. of Revision*, 111 Ohio St.3d 367, 2006-Ohio-5852, 856 N.E.2d 926, syllabus.  At the BTA hearing, however, Fennel went beyond testifying about the property and presented documentary evidence.  The school board also asserts that Fennel advanced specific legal contentions.  Under *Dayton Supply & Tool*, the school board insists that these activities constituted the unauthorized practice of law and that the unlawful conduct somehow bars the BTA's jurisdiction.

{¶ 15} We find it unnecessary to determine whether Fennel's actions at the BTA hearing constituted the unauthorized practice of law in this context.  That is so because the school board admits that Fennel could validly file the valuation complaint, and that filing established the jurisdiction of the BOR to consider and rule upon the complaint.  When the school board filed its notice of appeal at the BTA, legal counsel prepared and submitted the notice of appeal, and that event invoked the BTA's jurisdiction to review the BOR decision and issue a merits decision of its own.

{¶ 16} The school board advances the proposition that when someone engages in the unauthorized practice of law at a hearing, that act divests the tribunal of its jurisdiction.  But the school board does not cite and we do not find any authority to support that proposition.  Once jurisdiction has been vested in an administrative tribunal by the proper filing of a complaint or notice of appeal, a

later act constituting the unauthorized practice of law will not retroactively divest that tribunal of jurisdiction. Although we discussed the scope of a corporate officer's possible activities at a hearing in *Dayton Supply & Tool*, 111 Ohio St.3d 367, 2006-Ohio-5852, 856 N.E.2d 926, syllabus, ¶ 25, 28, we did so to clarify the issue of what activities constitute the practice of law *with respect to the filing and defense of the valuation complaint*. Indeed, the only *jurisdictional* issue actually presented in that case was "whether a nonattorney corporate officer who prepares and files a complaint with a board of revision on behalf of the corporation engages in the unauthorized practice of law." *Dayton Supply & Tool*, ¶ 1. See also *Sharon Village Ltd. v. Licking Cty. Bd. of Revision* (1997), 78 Ohio St.3d 479, 480, 678 N.E.2d 932 ("the sole issue presented to us is whether appellants' agent, a nonlawyer, engaged in the unauthorized practice of law when he prepared and filed the complaints with the BOR"). And while we have recently considered the issue of the unauthorized practice of law more broadly in the context of workers' compensation proceedings, that case arose by virtue of the filing of complaints with the Board of Commissioners on the Unauthorized Practice of Law. See *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 1.

{¶ 17} For the foregoing reasons, we conclude that the school board has shown no basis for finding an absence of jurisdiction at the BTA. We therefore turn to the merits issue.

*A sale of foreclosed property by HUD does not qualify as*
*an arm's-length transaction because, absent contrary evidence,*
*foreclosure sales are not "voluntary"*

{¶ 18} R.C. 5713.03 states that the auditor "shall consider the sale price of [any] tract, lot, or parcel to be the true value for taxation purposes" if the sale was "an arm's length sale" that occurred "within a reasonable length of time, either before or after the tax lien date." We have held that this provision constitutes a

statutory mandate that precludes the use of appraisal valuations when a sale price has been offered that is both recent and at arm's length. *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, ¶ 16; *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13 ("At the very heart of *Berea* lies the rejection of appraisal evidence of the value of the property whenever a recent, arm's-length sale price has been offered as evidence of value").

{¶ 19} On the other hand, the "price for which such real property would sell at auction or forced sale shall not be taken as the criterion of its value." R.C. 5713.04. The reference to "forced sale" in this statutory pronouncement codifies the basic proposition that a sale must be voluntary from the standpoint of both seller and buyer in order to qualify as an arm's-length transaction. See *Walters v. Knox Cty. Bd. of Revision* (1989), 47 Ohio St.3d 23, 546 N.E.2d 932, syllabus (one element of arm's-length sale is that "it is voluntary, *i.e.* without compulsion or duress"); *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 13 - 14.

{¶ 20} In deciding the present case, the BTA applied R.C. 5713.03's mandate that the sale price equals the true value of the property despite the school board's objections. Specifically, the BTA concluded, "[B]ased on the evidence before us, in conjunction with the property owner's representative's credible testimony about such sale," the "sale of the subject property, at auction, represented an arm's-length transaction upon which the BOR properly relied in valuing the property for tax year 2006." *Cincinnati School Dist. Bd. of Edn.*, BTA No. 2007-A-1196, 2009 WL 1999014, * 4. The BTA thereby rejected the school board's central contention that because the sale was a foreclosure sale under the auspices of HUD, the sale was an involuntary one and that it therefore could not be viewed as an arm's-length transaction for purposes of R.C. 5713.03.

**{¶ 21}** It is undisputed and fully documented that this sale was a foreclosure sale under the auspices of HUD. As a general matter, foreclosure sales reflect a strong impetus to liquidate the property in order to obtain cash to satisfy one or more creditors. On the one hand, this motivation is generally recognized as constituting a type of duress — though the compulsion to sell quickly may be greater or less in any particular case. See *Dublin Senior Community Ltd. Partnership v. Franklin Cty. Bd. of Revision* (1997), 80 Ohio St.3d 455, 458, 687 N.E.2d 426 (price owner paid for property at sheriff's sale could not qualify as arm's-length sale price under R.C. 5713.03); *RLG Properties, L.L.C. v. Franklin Cty. Bd. of Revision*, Franklin App. Nos. 06AP-132, 06AP-133, and 06AP-134, 2006-Ohio-5096, ¶ 12.

**{¶ 22}** More generally, the circumstances of a foreclosure sale deprive the sale of its arm's-length character for purposes of R.C. 5713.03 because the motivations of the parties to the sale, particularly the seller, do not qualify as typical of the motivations of other persons in the marketplace. See *AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830, ¶ 25 (a sale is at arm's length only if buyer and seller are typically motivated market participants), quoting *Cummins Property Servs., L.L.C.*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 31; *Rhodes v. Hamilton Cty. Bd. of Revision*, 117 Ohio St.3d 532, 2008-Ohio-1595, 885 N.E.2d 236, ¶ 10; accord *Walters*, 47 Ohio St.3d 23, 546 N.E.2d 932, syllabus (one essential element or an arm's-length sale is that the "parties act in their own self-interest").

**{¶ 23}** In spite of the foregoing considerations, the BTA expressed its view that the "public sale was carried out voluntarily by the seller." *Cincinnati School Dist. Bd. of Edn.*, BTA No. 2007-A-1196, 2009 WL 1999014, *4. Viewed as a finding of fact, the statement would ordinarily merit a high degree of deference on appeal. See *Olentangy Local Schools Bd. of Edn. v. Delaware Cty.*

*Bd. of Revision*, 125 Ohio St.3d 103, 2010-Ohio-1040, 926 N.E.2d 302, ¶ 15 (court will affirm BTA's factual determinations "if the record contains reliable and probative support" for them). But when the record is devoid of evidence to support the BTA's findings, those findings must be set aside on appeal. *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 27, citing *NFI Metro Ctr. II Assoc. v. Franklin Cty. Bd. of Revision* (1997), 78 Ohio St.3d 105, 107, 676 N.E.2d 881; *Gen. Motors Corp. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 513, 515-516, 660 N.E.2d 440.

{¶ 24} We hold that the record does not contain reliable and probative evidence to support the BTA's finding that HUD's sale of the property at issue qualified as "voluntary." Four factors compel us to draw that conclusion.

{¶ 25} First, the documentation of the sale on its face refers to the sale as a "foreclosure." Such a sale falls under the rubric of a "forced sale" that may not be regarded as the "criterion of * * * value" of the property pursuant to R.C. 5713.04. See *RLG Properties, L.L.C.*, 2006-Ohio-5096, ¶ 12 (foreclosure sale conducted while owner was in bankruptcy deemed to be a forced sale); *Dublin Senior Community Ltd. Partnership*, 80 Ohio St.3d at 458, 687 N.E.2d 426 (price paid at sheriff's sale after foreclosure was "not a relevant consideration in establishing true value").

{¶ 26} Second, the BTA did not specifically state what evidence it relied upon in finding that the HUD sale was voluntary. The evidence regarding the exposure of the property to the public and the competitive bidding process did not rebut the usual presumption that a foreclosure sale does not furnish the "criterion of * * * value" for the property. R.C. 5713.04. Specifically, the evidence shows that HUD apparently contracted to sell the property to a previous bidder for $506,000, and when that sale fell through for unexplained reasons, HUD accepted a $135,000 bid within two months of the failure of the earlier sale. These

circumstances fall well short of proving that HUD acted in a voluntary manner in disposing of the property. Indeed, the best that can be said for the owner's position is that the particular circumstances of the present case are ambiguous with respect to the character of the sale as a forced sale.

{¶ 27} Third, the BTA failed to explain how the HUD sale in the present case differs from the HUD sales in earlier decisions, all of which the board found did not indicate the value of the property. See *Helfrich v. Licking Cty. Bd. of Revision* (July 29, 2008), BTA No. 2007-N-414, 2008 WL 3198139, *4, affirmed, *Helfrich v. Licking Cty. Bd. of Revision*, Licking App. No. 08CA0098, 2009-Ohio-982, and cases cited therein.

{¶ 28} Specifically, the BTA in *Helfrich* described HUD transactions in the following terms: the federal agency serves as a "guarantor of loans which are made by a mortgage lending institution to a mortgagor property owner," so that when the lending institution forecloses on the defaulting owner, the lender "obtains title to the property, often as a result of judicial sale," after which the lender transfers title to HUD "for the amount of the Guarantee." Id. at * 3, quoting *Matic v. Mahoning Cty. Bd. of Revision* (Dec. 11, 1992), BTA No. 1990-H-1114, 1992 WL 380954, * 4; see also *TSM Partners, Inc. v. Montgomery Cty. Bd. of Revision* (Feb. 18, 2005), BTA No. 2003-V-1825, 2005 WL 434444, * 3; *ESA Park, Inc. v. Mahoning Cty. Bd. of Revision* (Apr. 29, 1994), BTA No. 92-M-812, 1994 WL 169656, * 4; *Blocksom v. Columbiana Cty. Bd. of Revision* (Apr. 29, 1994), BTA Nos. 93-H-609 and 93-M-795.

{¶ 29} In those earlier cases, the BTA found that the recited circumstances precluded considering a HUD sale as "voluntary as that term is used in *Walters*," inasmuch as HUD, "not ordinarily a property owner," obtains the property "under duress, and obviously seeks to divest itself of the property for at least the amount of its guarantee." *Matic*, BTA No. 90-H-1114, 1992 WL

380954, * 4. The BTA did not explain why the reasoning of its prior cases involving HUD sales would not apply to the present case.

{¶ 30} Finally, the BTA's reliance on certain other decisions that make reference to foreclosure is not persuasive, because those cases involve a more remote connection between the foreclosure and the sale. See *Mills v. Lucas Cty. Bd. of Revision* (Apr. 29, 1994), BTA No. 1992-Z-553, 1994 WL 169691, * 3 (sale by private entity that acquired the property from foreclosure and then sold it to buyer was at arm's length); *Murray Hill Properties L.P. v. Franklin Cty. Bd. of Revision* (Sept. 19, 1997), BTA No. 1996-A-1005, 1997 WL 594195, * 4 (same); *Nicholson Cleveland Terminal Co. v. Cuyahoga Cty. Bd. of Revision* (July 12, 1985), BTA Nos. 81-G-373 and 81-G-374, 1985 WL 22980, * 8 (sale of real property in connection with a liquidation pursuant to an agreement with a secured creditor was an arm's-length transaction where no foreclosure proceedings had been instituted); *Beljon v. Portage Cty. Bd. of Revision* (Aug. 1, 1997), BTA No. 96-T-996, 1997 WL 453119, * 4 (pendency of foreclosure proceedings and unsuccessful sheriff's sale during extended negotiations with the buyer did not make the ultimate sale involuntary); *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (Jan. 3, 1997), BTA Nos. 95-T-275 and 95-T-276, 1997 WL 17825, * 4 (where there was no foreclosure action against *the seller*, no distressed sale, and the property was not part of a bankruptcy estate, the mere fact that a third-party developer was in bankruptcy did not make the sale involuntary).

*The fact that a foreclosure sale involves an auction*
*does not make the sale an arm's-length transaction*

{¶ 31} Citing *Walters*, 47 Ohio St.3d 23, 546 N.E.2d 932, the BTA opined that despite the explicit prohibition in R.C. 5713.04, the "sale prices of parcels sold at auction are nevertheless the best evidence of value when all of the elements of an arm's-length sale are present." *Cincinnati School Dist. Bd. of*

11

*Edn.*, BTA No. 2007-A-1196, 2009 WL 1999014, * 4. The BTA then applied that doctrine to the facts of this case.

**{¶ 32}** *Walters* does not control this case. *Walters* involved an auction sale but not a *foreclosure* auction sale. *Walters,* 47 Ohio St.3d at 23, 546 N.E.2d 932. As a result, our holding in *Walters* that the sale qualified as an arm's-length transaction does not apply here. Because the present case involves a foreclosure, the sale price may not be regarded as an arm's-length transaction under R.C. 5713.03.

**{¶ 33}** Moreover, the BTA's reliance on its own decisions addressing auction sales is unpersuasive, because the cases do not involve foreclosure auctions, and because the BTA fails to explain why it decided the HUD-sale cases differently in light of the fact that they too involve auction sales. See *Matic*, BTA No. 90-H-1114, 1992 WL 380954, * 3 (acknowledging evidence that sale occurred at auction); *ESA Park, Inc.*, BTA No. 92-M-812, 1994 WL 169656, * 2; *TSM Partners, Inc.*, BTA No. 2003-V-1825, 2005 WL 434444, * 1.[1]

**{¶ 34}** To sum up, the BTA decision must be reversed because the sale of the property at issue by HUD to Fenco Development Company constituted a foreclosure sale, which is presumptively not at arm's length and which has not been shown to be voluntary.

## Conclusion

**{¶ 35}** For the foregoing reasons, the BOR and the BTA erred by adopting the sale price as the value of the property. Apart from the sale price, the record did not contain sufficient evidence for the BTA to perform an independent valuation of the property. Accordingly, we reverse the decision of the BTA and

---

1. It is worth noting that *Walters* reserved the question whether the mandatory language of R.C. 5713.04 allowed *any* auction sale to qualify as an arm's-length transaction. *Walters*, 47 Ohio St.3d at 25, 546 N.E.2d 932, fn. 2. *Walters* declined to address the issue because the appellant had not raised it. Id. Once again, we do not reach the issue in this case, because the present case involves a foreclosure sale, and that fact is dispositive.

thereby reinstate the auditor's original valuation of the property for tax year 2006.[2]

Decision reversed.

BROWN, C.J., and LUNDBERG STRATTON, O'DONNELL, and CUPP, JJ., concur.

PFEIFER, O'CONNOR, and LANZINGER, JJ., concur in part and dissent in part.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 36} The majority opinion states, "A foreclosure sale usually does not qualify as an arm's-length transaction because the sale occurs under the compulsion that the property be liquidated for the benefit of creditors. Moreover, the finding of the Board of Tax Appeals ('BTA') in this case that the foreclosure sale was voluntary is not supported by reliable and probative evidence * * *."

{¶ 37} I disagree with this conclusion for two simple reasons. First, the foreclosing party is the United States Department of Housing and Urban Development, a giant federal entity that cannot be compelled to do anything. If it sold a property at auction, it did so because it wanted to, not because it was forced to. Second, the BTA's decision was supported by the unrebutted testimony of the purchaser, who stated that the auction was nationally advertised and involved at least two other bidders.

{¶ 38} Furthermore, the BTA stated that the board of education in this case "presented no evidence or witnesses in support of its position that the BOR

_____

2. See *Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 23-24, 31 (BTA should reinstate the county's valuation of property if the record does not contain affirmative evidence permitting an independent valuation of the property); *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision* (2001), 90 Ohio St.3d 564, 566-567, 740 N.E.2d 276 (BTA may not adopt board of revision's changes to the auditor's valuation when those changes are not supported by evidence).

[Board of Revision] had improperly reduced the [property's] valuation." This lack of support for the BOR's position is evidenced by the county's own appraiser, who stated, "[T]he condition of the property is deplorable * * *. I do believe that our current value is too high."

{¶ 39} The BOR reviewed all the facts before it and concluded that the sale price was a true indication of value, even though the property had been sold at auction. Based on the record before it, the BTA upheld the valuation, concluding that the auction had been an arm's-length transaction. I agree that, under the circumstances of this case, the auction was an arm's-length transaction. I would affirm the decision of the Board of Tax Appeals.

O'CONNOR and LANZINGER, JJ., concur in the foregoing opinion.

_____

David C. DiMuzio, Inc., David C. DiMuzio, and Jennifer B. Antaki, for appellant.

Cooper & Elliott, L.L.C., Rex H. Elliott, Charles H. Cooper, and John C. Camillus, for appellees Fenco Development Company and Craig Fennel.

_____