[Cite as *Park Place Estates Neighborhood, L.L.C. v. Oyola*, 2012-Ohio-908.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| PARK PLACE ESTATES NEIGHBORHOOD, LLC | C.A. No. 25921 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE BARBERTON MUNICIPAL COURT COUNTY OF SUMMIT, OHIO CASE No. 11 CVI 198 |
| TAMMY OYOLA | |
| Appellee | |

DECISION AND JOURNAL ENTRY

Dated: March 7, 2012

BELFANCE, Presiding Judge.

{¶1} Park Place Estates Neighborhood, LLC. ("Park Place"), appeals from the trial court's order overruling its objections to the magistrate's decision. For the reasons set forth below, we affirm.

I.

{¶2} Park Place is a limited liability company whose members are homeowners in the Park Place Estates. Tammy Oyola was the treasurer for Park Place at all times pertinent to this appeal. In July 2010, the members of Park Place met at Panera Bread and voted to replace a light at the entrance to the development. According to the minutes, Robert Oyola, Ms. Oyola's husband, "volunteer[ed] to perform labor to erect new lighting * * *. Cost for material was estimated by [Mr.] Oyola at $100.00[.]" According to Mrs. Oyola, her husband had actually stated that the cost of the transformer would be $100 and when he began to explain that he would

have "to run electric[,]" he was interrupted and told to go ahead and do the job and that he should send a bill and Park Place would take care of it.

{¶3} On November 5, 2010, Ms. Oyola sent an e-mail to the members of Park Place informing them that her husband had completed his work on the light. She also attached an invoice for the work, which charged for 9 hours of labor at $26 an hour and $581.37 in materials for a total of $815.37. In her e-mail, Ms. Oyola stated that she needed a majority to approve the invoice and that she would make her husband's receipts available to anyone who questioned the amounts of the bill. It appears that the residents were satisfied with the work that Mr. Oyola completed.

{¶4} David Modarelli, the president of Park Place, wrote to Ms. Oyola in an e-mail on November 11, 2010, that he had not received a majority vote to pay the invoice, citing concerns about the cost and the fact that Mr. Oyola never informed the members about the substantial difference in cost. Mr. Modarelli also expressed concern that Ms. Oyola planned to pay the money out of Park Place's bank account as not all of the neighbors had been paying into the account.

{¶5} Ms. Oyola wrote back to Mr. Modarelli and acknowledged that her husband had not submitted a second quote because he assumed everyone would pay him for his work. However, she denied that $100 was the only cost discussed at the July meeting as Mr. Oyola had told the members that he would have to run electrical cable to the light.

{¶6} Mr. Modarelli wrote back to Ms. Oyola to tell her that he believed the members would approve paying Mr. Oyola $300 for his work on the light. Ms. Oyola responded that she would check with her husband and let Mr. Modarelli know. However, there was apparently no further discussion of the matter until November 23, 2010, when Ms. Oyola sent Mr. Modarelli an

e-mail in which she stated she had received majority approval to pay her husband. The next day, Ms. Oyola transferred $521.74 from the treasury to her husband and then resigned as treasurer. Thus sum transferred covered the cost of the materials used but did not cover the cost of any labor.

{¶7} Park Place filed a complaint alleging that Ms. Oyola had breached her fiduciary duty against self-dealing and that she had converted the funds of Park Place and its members. It sought restitution of the $521.74, punitive damages of $1,043.48, and attorney fees of $1,400. Following a hearing, the magistrate determined that Park Place had failed to demonstrate that Ms. Oyola had breached a fiduciary duty or illegally converted the funds. Park Place filed objections, but the lower court overruled the objections and adopted the magistrate's decision.

{¶8} Park Place has appealed, raising four assignments of error. For ease of discussion, we have consolidated Park Place's assignments of error.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT'S ADOPTION OF THE MAGISTRATE'S DECISION ON THE PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM WAS NOT SUPPORTED BY THE EVIDENCE.

ASSIGNMENT OF ERROR II

THE TRIAL COURT'S ADOPTION OF THE MAGISTRATE'S DECISION ON THE PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9} In its first and second assignments of error, Park Place argues that the trial court incorrectly determined that it had failed to meet its burden to establish a breach of fiduciary duty. We disagree.

{¶10} This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. No. 24150, 2008–Ohio–5232, ¶ 9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai,* 9th Dist. No. 08CA0049–M, 2009–Ohio–3139, ¶ 18. In civil matters, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶11} "In order to prevail on a claim for breach of fiduciary duty, a plaintiff must show the existence of a duty that arose from a fiduciary relationship, a breach of that duty, and an injury proximately resulting from the breach of duty." *Rothschild v. Eckstein*, 9th Dist. No. 09CA009733, 2010-Ohio-4285, ¶ 24. There is no dispute that Ms. Oyola was the treasurer of Park Place and, therefore, owed the company a fiduciary duty. *See Dayton Supply & Tool Co., Inc. v. Montgomery Cty. Bd. of Revision*, 111 Ohio St.3d 367, 2006-Ohio-5852, ¶ 22. The question presented in this appeal is whether Ms. Oyola breached her fiduciary duty to Park Place by transferring the funds from Park Place's account into her own.

{¶12} We initially note that Park Place argues that the magistrate applied the wrong standard to evaluating its claim because self-dealing transactions by a fiduciary are presumptively void or voidable. *See Bacon v. Donnet*, 9th Dist. No. 21201, 2003-Ohio-1301, ¶ 30. However, R.C. 1705.31(A)(1)(b) provides:

> Unless otherwise provided in the operating agreement, * * * [n]o contract, action, or transaction is void or voidable with respect to a limited liability company because it is between or affects the company and one or more of its members, managers, or officers, or because it is between or affects the company and any other person in which one or more of its members, managers, or officers are members, managers, directors, trustees, or officers or have a financial or personal

interest, or because one or more interested members, managers, or officers participate in or vote at the meeting that authorizes the contract, action, or transaction, if * * * [t]he material facts as to his or their relationship or interest and as to the contract, action, or transaction are disclosed or are known to the members entitled to vote on the contract, action, or transaction, and the contract, action, or transaction is specifically approved at a meeting of the members held for that purpose by the affirmative vote of the members entitled to exercise a majority of the voting power of the company held by persons not interested in the contract, action, or transaction.

"'Operating agreement' means all of the valid written or oral agreements of the members or, in the case of a limited liability company consisting of one member, a written declaration of that member, as to the affairs of a limited liability company and the conduct of its business." R.C. 1705.01(J).

{¶13} When Ms. Oyola was treasurer, Park Place had no written bylaws. However, the evidence at the hearing indicated that the treasurer was authorized to make a payment if half of the members of Park Place approved the expenditure and Park Place's practice was to approve such transactions without a formal meeting. Other evidence was presented that highlighted the informal manner of voting to approve Park Place's expenditures. Accordingly, the payment at issue in this case was not void or voidable if it was specifically approved by an affirmative vote of the members entitled to exercise a majority of the voting power. *See* R.C. 1705.31(A)(1)(b). The magistrate found that "the evidence supports a finding that [Ms. Oyola] made [the transaction] only after obtaining authorization for the same * * * from a majority of [Park Place's] members, according to the standards * * * for determining such status." There was competent, credible evidence to support this finding and, thus, Park Place's argument is not well taken.

{¶14} There are eleven homes in the Park Place development. A household in the development was a member of Park Place if the household paid a monthly fee. If a household

did not pay the dues, it would not be considered a member, but at what point the household would lose its privileges due to subsequent nonpayment of dues was never established. When Ms. Oyola was the treasurer of Park Place, one household never paid dues. According to Ms. Oyola, she did not consider that household to be a member of Park Place because the owner never paid her dues nor participated in the meetings. Ms. Oyola testified that she did not even have any contact information for that household. Excluding the Oyola's household and the household that never paid its dues, Ms. Oyola believed that there were nine voting members of Park Place. Five of those nine households gave Ms. Oyola approval to go ahead and pay her husband.

{¶15} Park Place argues that the five households did not constitute a majority for three reasons: 1) One of the households was behind on its monthly dues; 2) the evidence indicated that the vote of one of the households was split; and 3) the money in the bank account actually belonged to the four households who voted against paying Mr. Oyola.

{¶16} As mentioned above, however, the record indicates that there was no set time after which a household lost its membership privileges for failing to pay its dues. The household that was behind in its fees had not paid in two months, but it was still receiving the services associated with paying its dues such as lawn care and snow removal. Accordingly, the record supports the determination that the household was a voting member of Park Place.

{¶17} Park Place also argues that one of the households in Ms. Oyola's majority should not count because the husband and wife disagreed as to whether the payment should be approved. In support of this argument, Park Place submitted a copy of the husband's e-mail to Mr. Modarelli. However, this email does not state that the husband was voting against authorizing payment, but, rather, that Mr. Oyola should have informed Park Place about the

increase in costs before going ahead on the work. In addition, the president of Park Place stated that there was only one vote for married persons and that if the vote is made by a spouse, there was no need to check with the other spouse to verify the vote. Accordingly, the record supports the determination that the household voted to release the funds to Ms. Oyola.

{¶18} Finally, Park Place argues that the money in the bank account actually belonged to the four members who voted against paying because it had been accumulated when those members had been paying a higher monthly rate. However, no witness was able to definitively state that that was how the money had actually been accumulated, and, more importantly, there was no evidence that the distribution of these "accumulated" funds was handled any differently than any other payment made by Park Place. In other words, even assuming that the money accumulated as Park Place suggests, the record would not support a determination that the money belonged to the households that had paid the higher fees or that those households were the only ones that could decide how to spend it. Instead, the record indicates that all monies from Park Place were disbursed via a majority vote.

{¶19} There was competent, credible evidence that five out of the nine homes, excluding the Oyolas and the household that never participated in Park Place, approved the transfer of the money. Given Park Place's practice of approving transactions via majority vote, Ms. Oyola, as treasurer, was authorized to make the transfer. Accordingly, we cannot conclude that the trial court abused its discretion when it overruled Park Place's objections to the magistrate's decision.

{¶20} Park Place's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT'S ADOPTION OF THE MAGISTRATE'S DECISION ON THE PLAINTIFF'S CONVERSION CLAIM WAS NOT SUPPORTED BY THE EVIDENCE.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT'S ADOPTION OF THE MAGISTRATE'S DECISION ON
THE PLAINTIFF'S CONVERSION CLAIM WAS AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE.

{¶21} Park Place's third and fourth assignments of error concern the trial court's rejection of Park Place's conversion claim. It argues that the money in Park Place's bank account belonged to the households that had been paying higher dues and therefore, since none of those households had approved the transfer, Ms. Oyola converted the funds. We disagree.

{¶22} Conversion is an exercise of dominion or control wrongfully exerted over the personal property of another, in denial of or under a claim inconsistent with his rights. *McCartney v. Universal Elec. Power Corp.*, 9th Dist. No. 21643, 2004-Ohio-959, ¶ 14. As discussed above, the record would not support a determination that the money in Park Place's bank account belonged solely to the households that had paid the higher fees or that those households were the only ones that could decide how to spend it. There was competent, credible evidence to support the determination that five of nine voting households approved the transfer of the funds and, according to the standard practice of Park Place, that was sufficient to authorize the treasurer to transfer the funds. Accordingly, the determination that Ms. Oyola did not wrongfully exercise dominion or control over Park Place's funds and, therefore, did not convert the funds was not against the manifest weight of the evidence. *See id*.

{¶23} Park Place's third and fourth assignments of error are overruled.

III.

{¶24} Park Place's assignments of error are overruled. The judgment of the Municipal Court of Barberton, Small Claims Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

MOORE, J.
DICKINSON, J.
CONCUR.

APPEARANCES:

TIMOTHY H. HANNA, Attorney at Law, for Appellant.

TAMMY L. OYOLA, pro se, Appellee.